ASSOCIATED BUILDERS AND CONTRACTORS, INC., BALTIMORE METROPOLITAN CHAPTER, Appellant,

v.

John R. IRVING, General Counsel National Labor Relations Board, Appellee.

No. 78–1268.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1978.

Decided Dec. 18, 1979.

N. Peter Lareau, Baltimore, Md. (Jeffrey P. Ayres, Baltimore, Md., on brief), for appellant.

Linda Dreeben, N. L. R. B., Washington, D. C. (John S. Irving, General Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Aileen A. Armstrong, Asst. Gen. Counsel for Sp. Litigation, Bernard P. Jeweler, N. L. R. B., Washington, D. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

This is an appeal from an order of the District Court for the District of Maryland dismissing an action by Associated Builders and Contractors (ABC) for a declaratory judgment and a writ of mandamus against the General Counsel of the National Labor Relations Board to declare unlawful the refusal of the General Counsel to file a requested complaint with the National Labor Relations Board and to require him to file such a complaint. We affirm the dismissal by the district court.

The Mass Transit Administration, an instrumentality of the Department of Transportation of the State of Maryland, entered into a "Labor Stabilization Agreement" with the Baltimore Building and Construction Trade Council, AFL–CIO and 21 other labor organizations. Article III of that agreement, which establishes conditions of employment in connection with the construction of the Baltimore Region Rapid Transit System, provides:

> Nothing in this agreement shall limit the selection or utilization of contractors or subcontractors to perform construction work on the Rapid Transit Project; provided, however, that all such contractors shall comply with the terms of this agreement.

Article IV(a) of the agreement provides in part:

> . . . By accepting any award of construction work, either as contractor or subcontractor (of any level or tier), on any part of the jobsite of the MTA project each employer agrees (i) to be bound by each and every provision of this Agreement, (ii) to execute either personally or through a duly authorized agent (in the form set forth in either Exhibit A or Exhibit B hereto) its agreement to that effect, and (iii) to require that any Employer which is a subcontractor to it agree in writing (in form set forth in either Exhibit A or Exhibit B hereto) to be bound by the terms of the agreement.

The gist of the agreement, of course, is that all contractors and subcontractors on the project would have to sign the union contract.

ABC's complaint alleges that the contract is an unlawful hot-cargo agreement and thus an unfair labor practice under § 8(e) of the National Labor Relations Act (NLRA) (29 U.S.C. § 158(e)).

Section 8(e) of the NLRA provides in part:

> It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from hauling, using, selling, transporting, or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter con-

taining such an agreement shall be to such extent unenforcable and void: . .

Section 8(e) was added as an amendment to the NLRA in 1959 in an attempt to close a "loophole" in the then existing law against secondary boycotts.[1] Although secondary boycotts were banned by the statute in 1947,[2] unions in many instances could obtain the same result through hot cargo or hot goods clauses in collective bargaining agreements. These clauses were designed to prevent an employer from dealing in goods of an employer engaged in a labor dispute.

A review of the legislative history shows a grave concern in Congress over the widespread use of this tactic by the Teamsters union.[3] Apparently that union was well known for entering into such agreements with trucking companies, thus preventing another company which was having a labor dispute from shipping its own goods or receiving supplies, etc.

To close the loophole in § 8(b)(4), Congress enacted § 8(e), making such contracts between employers and unions illegal, unenforceable and a violation of the statute and an unfair labor practice.

ABC is an association of contractors, subcontractors and suppliers doing business in the Baltimore area. It filed a charge with the Fifth Regional Office of the NLRB, charging that the Transit Administration contracts violated the hot cargo provision of § 8(e) of the statute. The Regional Director refused to file a complaint with the Board upon the ground that the Transit Administration, being a state agency, was "not an employer within the meaning of section 2(2) of the National Labor Relations Act" and "[t]herefore the proscriptions of § 8(e) do not apply to such governmental employers." ABC appealed that decision to the office of the General Counsel, which sustained the Regional Director's ruling.

ABC then filed this action in the district court seeking a declaratory judgment that the General Counsel's finding was in error. It contends that state agencies are indeed employers within the meaning of the statute. It also sought a writ of mandamus to require the General Counsel to issue a complaint upon the charge filed. Jurisdiction is claimed under 28 U.S.C. §§ 1337 and 1346(a)(2).[4]

The General Counsel moved to dismiss on the ground that the district court lacked subject matter jurisdiction. The district court granted the motion and dismissed the complaint ruling that the decision of the General Counsel not to file a complaint is not reviewable by a district court. The district court determined that the court was without jurisdiction to consider the matter.

Whether the decision of the General Counsel in this case is final and therefore not reviewable in any court depends upon the construction of § 3(d), 29 U.S.C. § 153(d), of the statute which provides, in part, as follows:

> There shall be a General Counsel of the Board who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or may be provided by law. . . .

The NLRA contains no express provision authorizing judicial review of decisions by

---

1. 1959 *U.S.Code Cong. & Admin.News* pp. 2318, 2443. See also 2383–84.

2. § 8(b)(4) of the National Labor Relations Act, 29 U.S.C. 158(b)(4).

3. 1959 *U.S.Code Cong. & Admin.News* pp. 2443–45, 2383–84.

4. On appeal ABC does not rely upon § 1346(a)(2) as a basis for jurisdiction.

the General Counsel refusing to file a complaint with the Labor Board charging an unfair labor practice.

ABC contends that under the Administrative Procedure Act, enacted one year prior to the 1947 amendments to the NLRA, it has a right to obtain judicial review of the General Counsel's decision. 5 U.S.C. § 702 provides in part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

.     .     .     .     .

The passage just quoted from, 5 U.S.C. § 702, would appear to entitle ABC to judicial review [5] were it not for the provisions of 5 U.S.C. § 701(a) as follows:

This chapter applies, according to the provisions thereof, except to the extent that —(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.

The issue, then, is whether, under 5 U.S.C. § 701(a) judicial review of the General Counsel's decision, which would otherwise be available under 5 U.S.C. § 702, is precluded by § 3(d) of the NLRA.

We think the legislative history shows that the General Counsel was intended to be a political position similar to that of an attorney general or other executive officer of the government. The office of General Counsel, although representing the Board in its actions, was created to be independent of the Board and responsible only to the President and the Congress rather than to the Board.[6] Appointment of the General Counsel was placed not in the hands of the Board but in the hands of the President. Our position is sustained by the House Conference Report and the position of Senator Taft which follows:

(3) Section 10(b) of the amended act under the House Bill contemplated that, in unfair practice cases, the administrator would investigate charges, issue complaints, and prosecute cases. The Senate amendment did not contain comparable provisions. As previously noted, the conference agreement contemplates that these functions will be performed under the exclusive and independent direction of the General Counsel of the Board, an official appointed by the President by and with the advice and consent of the Senate.

House Conference Report No. 510 on H.R. 3020, 1 *Leg. Hist. of the L.M.R.A.* 557 (1947), U.S.Code Cong.Serv. 1947, pp. 1135, 1159.

As noted by Senator Taft, co-sponsor of the bill:

What the conference amendment does is simply to transfer this "vast and unreviewable power" from this anonymous little group to a statutory officer responsible to the President and to the Congress. So far as having unfettered discretion is concerned he, of course, must respect the rules of decision of the Board and of the courts. In this respect his function is like that of the Attorney General of the United States or a state attorney general. Congressional Record, Senate, June 12, 1947, p. 7000.[7]

We think it was the intent of Congress that the General Counsel's discretion as to the issuance of complaints should ordinarily be checked by his political responsibility,

---

**5.** The Administrative Procedure Act, in and of itself, however, does not confer subject-matter jurisdiction upon the court. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**6.** See *Leg. Hist. of the L.M.R.A.* at 296, 365, 541, 866, 900–01, 905, 918, 1494, 1538, 1559–60, 1567, 1576–77, 1588, 1617 and 1629–32.

**7.** See also the comments of Congressman Hartley, 1 *Leg. Hist. of the L.M.R.A. 883.*

not by judicial review. We therefore adopt the view alluded to by this court earlier and by many other courts that his "final authority" in most instances precludes judicial review of his decision regarding the issuance of an unfair labor practice complaint.[8]

Although the issue as to the interpretation of § 3(d) has not been resolved definitively by the Supreme Court, that court or its justices have, in various decisions, indicated in discussion that such a decision by the General Counsel is not reviewable by the courts.

*Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), involved a suit by the administrator of a deceased employee against his union for the breach of the union's duty of fair representation. The Court held that the employee's right of action was not preempted by the jurisdiction granted the Labor Board by the LMRA, and on page 182, 87 S.Ct. on pages 912–13 stated:

> . . . [T]he duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law. Were we to hold, as petitioners and the Government urge, that the courts are foreclosed by the NLRB's *Miranda's Fuel* decision from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the *Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint.* [Citation omitted, Emphasis added]

Although *Vaca* resulted in the plaintiff being allowed to proceed, the opposite result occurred in *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1970). In that case, resolution of the issue as to whether an employee could be expelled by his union for non-payment of dues depended upon the proper construction of the union constitution and bylaws. The Court held that a state court could not make such a determination because it was preempted by the power of the Board to pass upon unfair labor practices. Unfortunately for the plaintiff, in a companion case, the General Counsel had refused to issue a complaint. In arguing against preemption, because an admittedly wronged plaintiff might be left without a remedy, Mr. Justice Douglas, in his dissenting opinion, stated:

> . . . If the General Counsel holds against the complaining party and refuses to issue an unfair labor practice complaint, the decision is apparently unreviewable. . . .

Id. at 303–304, 91 S.Ct. at 1926.

In *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), the Court in dealing with a request under the Freedom of Information Act for certain papers, generated by the General Counsel in determining whether to permit the filing of certain labor practice complaints, stated that certain opinions by the Office of the General Counsel supporting a decision not to proceed with a case were parts of a final opinion and therefore subject to disclosure. The Court noted that:

> . . . Congress has delegated to the Office of General Counsel "on behalf of the Board" the unreviewable authority to determine whether a complaint is filed. . . . In those cases in which he decides that a complaint shall issue, the

---

8. *Wellington Mill Div., West Point Mfg. Co. v. NLRB*, 330 F.2d 579 (4th Cir. 1964), cert. den., 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964); *Bays v. Miller*, 524 F.2d 631 (9th Cir. 1975); *Hernandez v. NLRB*, 505 F.2d 119 (5th Cir. 1974); *Newspaper Guild, Erie Newspaper Guild v. NLRB*, 489 F.2d 416 (3d Cir. 1973); *Mayer v. Ordman*, 391 F.2d 889 (6th Cir. 1968), cert. den., 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968); *Div. 1267 Amal. Ass'n of Street, El. Ry., Etc., Emp. v. Ordman*, 116 U.S. App.D.C. 7, 320 F.2d 729 (D.C. Cir. 1963). Cf. *Illinois St. Empl. Coun. 34 AF of S., C & M. E. v. NLRB*, 395 F.Supp. 1011 (N.D.Ill.1975), aff'd without opinion 530 F.2d 979 (7th Cir. 1976). But see *Southern Cal. Dist. Coun. of Lab., Local 1184 v. Ordman*, 318 F.Supp. 633 (C.D. Cal.1970).

The *Wellington* case may well be read as dispositive here.

General Counsel becomes an advocate before the Board in support of the complaint. In those cases in which he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first persuading the Office of General Counsel that his claim is sufficiently meritorious to warrant Board consideration.

Id. at 138–39, 95 S.Ct. at 1511.

See also *Hanna Mining v. Marine Engineers*, 382 U.S. 181, 191–92, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965).

In *Wellington Mill Division*, 330 F.2d 579 (4th Cir. 1964), this court reviewed a decision by the Board holding that certain discharges were unfair labor practices. There the union also asked the court to rule on the merits of a claim not charged in the complaint filed by the General Counsel or considered by the Board. In refusing to consider the union's claim, this court stated:

> Section 3(d) of the Act [commits] to the discretion of the General Counsel the decision as to whether he will issue a complaint and his refusal to do so is final and unappealable. The decision as to the *scope* of a complaint is for the General Counsel.

Id. at 590. The court then concluded that it had "no power to order the General Counsel to issue a complaint," p. 591, and did not consider the merits of the question.

We therefore conclude that the General Counsel's refusal to issue a complaint is ordinarily not reviewable by federal courts.

An issue remains, however, as to whether the nonreviewability of that action, committed to the discretion of the General Counsel, is based upon a failure to state a claim upon which relief can be granted or upon lack of jurisdiction by the federal courts. We believe the latter, with an exception to be noted later.

While the question has not been decided by the Supreme Court, many circuits have based their conclusion of nonreviewability on lack of jurisdiction.

In *Mayer v. Ordman*, 391 F.2d 889 (6th Cir. 1968), cert. den., 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968), the Sixth Circuit held that federal courts were without jurisdiction to consider claims arising from the General Counsel's refusal to issue a complaint upon request. Relying upon *Vaca*, the court noted that it was well settled that the "National Labor Relations Act precludes District Court review of the manner in which the General Counsel of the Board investigated unfair labor practice charges and determines whether to issue a complaint thereon." Id. at 889.

Most of the circuits have followed this line of thought and have either reasoned or held that the federal courts were without jurisdiction to consider such a decision by the General Counsel.[9]

In *Panama Canal Co. v. Grace Lines, Inc.*, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1957), the Supreme Court indicated that "[s]ection 10 of the Administrative Procedure Act . . . *excludes from the categories of cases subject to judicial review* 'agency action' that is 'by law committed to agency discretion.'" (Emphasis ours) Id. at 317, 78 S.Ct. at 757. We think by this

**9.** *Bays v. Miller*, supra; *Saez v. Goslee*, 463 F.2d 214 (1st Cir. 1972), cert. den., 409 U.S. 1024, 92 S.Ct. 466, 34 L.Ed.2d 316 (1972); *Balanyi v. Local 1031, IBEW*, 374 F.2d 723 (7th Cir. 1967); *United Electrical Contractors Assoc. v. Ordman*, 366 F.2d 776 (2d Cir. 1966), cert. den., 385 U.S. 1026, 87 S.Ct. 753, 17 L.Ed.2d 674 (1966); *Contractors Assoc. of Phil. & Eastern Pa. v. NLRB*, 295 F.2d 526 (3d Cir. 1961), cert. den., 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 612 (1962); *Hourihan v. NLRB*, 91 U.S.App.D.C. 316, 201 F.2d 187 (D.C.Cir.1952), cert. den., 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953);

*General Drivers, Etc. Local 886, AFL v. NLRB*, 179 F.2d 492 (10th Cir. 1950). Cf. *Illinois St. Empl. Coun. 34 AF of S., C & M. E. v. NLRB*, 395 F.Supp. 1011 (N.D.Ill., 1975), aff'd without opinion, 530 F.2d 979 (7th Cir. 1976); *Div. 1267 Amal. Ass'n of Street, El. Ry., Etc., Emp. v. Ordman*, 320 F.2d 729 (D.C.Cir.1963).

Other cases have merely said without explanation of underlying reasoning that such a decision of the General Counsel is not reviewable. E.g., *NLRB v. Internat'l Bro. of Elec. Wkrs, Loc. 357*, 445 F.2d 1015 (9th Cir.1971).

language the Court is indicating that the federal courts are without jurisdiction to consider such matters.

In that case plaintiff sued in a federal court seeking to require the Panama Canal Co. to raise the tolls that it charged for use of the canal. The Court, in reversing the decision of the court of appeals that had entered summary judgment for the plaintiffs, concluded that such a decision to act or not to act was left to the "expertise of the agency burdened with the responsibility for decision." Id. at 318.

But, in *Panama Canal Co.*, the Court indicated that judicial relief is sometimes available where the agency's failure to act turns on a mistake of law. Id. at 318, 78 S.Ct. 752. That position was taken by the Court in *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958). There the Court concluded that jurisdiction did lie with the federal courts to decide whether the Secretary of the Army had misapplied the law in considering a veteran's discharge status. First the Court noted that "[g]enerally, judicial relief is available to one who has been injured by an act of a government officer which is in excess of his express or implied powers." Id. at 582, 78 S.Ct. at 435. The Court implicitly concluded that the action taken by the Secretary of the Army, after misinterpreting the law by way of regulations previously issued, was in excess of his statutory authority. In essence, the Court decided that this mistake of law by an agency showed that it acted in excess of its statutory authority and thus was such an action as is reviewable by the courts.

Again, in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Court held that an act of the NLRB refusing to take a separate vote of professional employees as to whether or not they would be included in a bargaining unit was in violation of the positive command of a statute that "the Board shall not" decide a mixed unit (professional and non-professional) is appropriate "unless a majority of such professional employees vote for inclusion." The Court held such action to be in excess of the Board's delegated powers and thus subject to judicial review by way of direct suit in the district court.

We think the *Leedom* standard is the proper standard to use here, for we see no significant difference in the standard that ought to be applied in reviewing acts of the Board and acts of the General Counsel when judicial review is sought by means other than those provided for by special statute. Applying that standard, we are of opinion we should not review an act of the General Counsel in refusing to issue an unfair labor practice complaint unless his act is in excess of his delegated powers. While it is readily seen that an act of the General Counsel may be so far outside the prescriptions of law as to amount to action taken in excess of delegated power, such as when clearly contrary to a specific prohibition of a statute as in *Leedom*, we think the question of whether or not the Transit Administration is an employer within the meaning of the statute involved here is not so clear that we can say the act of the General Counsel in this case (in giving his opinion that the Transit Administration was not an employer within the meaning of the statute) was in excess of his delegated authority. It must be admitted that the General Counsel, comparing him to an attorney general as the legislative history indicates we should, must give his opinion on the meaning of many statutes in his ordinary day to day duties and that it is certainly within his authority so to do. And, while it may be true that the reasoning of the Board in *Lufthansa German Airlines*, 137 NLRB 232 (1972), as adopted by the Ninth Circuit in *Marriott Corp. v. NLRB*, 491 F.2d 367 (9th Cir. 1974), seems preferable to the reasoning of the Board in *New York Electrical Contractors Association*, 244 NLRB, No. 46 (1979), which latter case overruled *Lufthansa*, nevertheless, the conflicting opinions of the Board on precisely the same subject within a few years of each other, illustrates our opinion that the meaning of the statute is not so clear that we can say with reasonable certainty that the General Counsel exceeded his delegated authority in his construction of it, although he well may have been wrong.

In such cases the courts, of course, do have jurisdiction to determine their own

jurisdiction, but unless the court can ascertain that the General Counsel acted in excess of his delegated authority, it has no jurisdiction to require him to act, and should dismiss the case for want of jurisdiction. This the district court properly did.

The judgment of the district court is accordingly

*AFFIRMED.*