681 F.2d 598
 110 L.R.R.M. (BNA) 2977, 95 Lab.Cas. P 13,738
 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO,
v.
William A. LUBBERS, General Counsel of the National Labor
Relations Board, James S. Scott, Regional Director, Region
32 of the National Labor Relations Board, John H. Fanning,
Chairman, and Members Howard Jenkins, John A. Pennello and
John C. Truesdale, Individually and as Chairman and Members
of the NLRB, Norton J. Come, Dean H. Francis and Betty J.
Murphy, Individually, Defendants-Appellees,
and
Lockheed Missiles & Space Company, Inc., Intervenor-Appellee.
 No. 80-4331.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 13, 1982.
Decided July 13, 1982.
 
 J. F. Henning, Jr., Henning, Walsh & Ritchie, San Francisco, Cal., for Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO.
 Ralph A. Hurvitz, Sunnyvale, Cal., for Lockheed Missiles & Space, Co., Inc.
 John D. Burgoyne, Washington, D. C., B. Scott Silverman, San Francisco, Cal., argued for defendants-appellees; Michael Stein, Washington, D. C., Morrison & Forerster, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Northern District of California.
 Before TRASK, SNEED and TANG, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 Appellant International Association of Machinists and Aerospace Workers (hereinafter the International) brought an action for declaratory and injunctive relief against appellee, the General Counsel of the National Labor Relations Board (NLRB), seeking review of his decision to withdraw a previously issued complaint and dismiss appellant's unfair labor practice charge. The district court dismissed the action for lack of subject matter jurisdiction.
 
 
 2
 In this appeal, the International challenges the general proposition that the General Counsel's discretionary decisions regarding the investigation of charges, and the issuance and prosecution of complaints is precluded from review under section 3(d) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 153(d) (1976).[1] Contrary to the general rule, the International asserts that the General Counsel's decisions are presumptively reviewable. In the alternative, appellant contends that even if the General Counsel's decisions are as a rule unreviewable, this case fits within an exception to the rule because the General Counsel allegedly violated constitutional and statutory mandates. Finally, appellant argues that a distinction has been recognized, for purposes of judicial review, between the issuance of an unfair labor practice complaint and the decision to withdraw a complaint after it has been issued. Appellant urges that the general rule of non-reviewability does not apply to the withdrawal of complaints.
 
 
 3
 We affirm the district court's dismissal of the present action. Appellant's assault on the non-reviewability of the General Counsel's prosecutorial decisions is foreclosed by a clear line of contrary authority. Although there are exceptions to this rule, the facts of this case do not fit those exceptions because appellant has not shown that the General Counsel abused his discretionary authority or acted in violation of the labor laws. Concerning the purported distinction between the issuance and the withdrawal of an unfair labor practice complaint, we agree with the Fourth Circuit's decision in George Banta Co. v. NLRB, 626 F.2d 354 (4th Cir. 1980), which held that when no settlement of a complaint is at issue, the decision to withdraw the charge is non-reviewable.
 
 I.
 Facts
 
 4
 Many of the facts relating to this appeal are set forth in this court's opinion in Benda v. Grand Lodge of the International Association of Machinists & Aerospace Workers, 584 F.2d 308 (9th Cir. 1978). A restatement of the facts relevant to this appeal follows.
 
 
 5
 In the summer of 1977, contract negotiations were held between the International and Lockheed Missiles & Space Company, Inc. (LMSC), a wholly-owned subsidiary of Lockheed Aircraft Corporation. Although previous negotiations had been coordinated with the negotiations at other Lockheed subsidiaries, each company had voted separately on whether to accept or reject a new contract. The acceptance of a contract by employees of one subsidiary did not preclude its rejection by employees of another.
 
 
 6
 LMSC employees rejected the contract proposals from the 1977 summer negotiations and struck in October. When negotiations resumed in November, the International informed the district and local union representatives that it intended to engage in corporate-wide joint unified bargaining. The new bargaining plan required a majority vote of the combined membership employed at all Lockheed subsidiaries before any proposal could be accepted.
 
 
 7
 On November 22, three of the subsidiaries presented their final contract offers and the LMSC union representatives voted to present the LMSC proposal to its membership for a vote. Negotiators representing the unions at two other subsidiaries were not satisfied with proposals they received and voted not to present the contracts to their membership. Based on these developments, the International representatives ruled that all Lockheed companies would be informed that the contract proposals had been rejected. LMSC union representatives objected to this procedure and consulted their local delegate bodies who recommended that the contract be presented to the members.
 
 
 8
 On November 25, the International's president suspended the officers of District Lodge 508, the lodge which represented LMSC employees, and designated an officer of the International as Trustee to take charge of the affairs of the lodge. Two days later, LMSC employees voted to accept the contract. Despite this acceptance, the International attempted to continue the strike against LMSC.
 
 
 9
 In December 1977, the president of District Lodge 508 sued in district court challenging the trusteeship imposed by the International. The district court entered a preliminary injunction against the International. The injunction prohibited the International from maintaining a trusteeship over the lodge and from suspending officers and in any way interfering with those LMSC employees who desired to return to their jobs.
 
 
 10
 Also during this period the International filed an unfair labor practice charge against LMSC with the NLRB. The General Counsel issued a complaint citing LMSC's action in bypassing the International and dealing directly with District Lodge 508. The complaint alleged that LMSC violated its duty to bargain collectively with the union. The General Counsel, however, deferred any further action regarding the complaint pending appeal of the preliminary injunction.
 
 
 11
 This court affirmed the preliminary injunction against the International in Benda v. Grand Lodge of the International Association of Machinists & Aerospace Workers, 584 F.2d 308 (9th Cir. 1978). The court found, inter alia, that the twenty-year pattern of separate voting by the employees of each Lockheed subsidiary indicated that the suspended officers of Lodge 508 were properly carrying out their collective bargaining duties and that it was the International, rather than the officers of Lodge 508, that was interfering with the bargaining process. Id. at 317.
 
 
 12
 After the result in Benda, the complaint against LMSC was reviewed by the General Counsel and the decision was made to withdraw the unfair labor practice complaint and dismiss the charge. The order issued by the Acting Regional Director for Region 32 indicated this decision was based on the conclusion that LMSC was justified in its refusal to bargain:
 
 
 13
 (LMSC) had not unlawfully refused to bargain because it had at least a good faith belief that the International was engaging in bad faith bargaining in violation of Section 8(b)(3), i.e., that the International was attempting to force the Employer to agree to "coordinated bargaining" among the separate units, a non-mandatory subject of bargaining.
 
 
 14
 The Regional Director denied the International's request to reissue the withdrawn complaint. The union brought an administrative appeal, but the General Counsel upheld the dismissal.
 
 II.
 
 15
 The General Counsel's Prosecutorial Discretion
 
 
 16
 Appellant insists that the General Counsel's decision to withdraw and dismiss appellant's unfair labor practice charge is presumptively reviewable. In support of this argument appellant relies upon sections 702[2] and 704[3] of the Administrative Procedures Act (APA), 5 U.S.C. §§ 702, 704 (1976), which establish the general policy of the Act favoring review of administrative actions. Appellant raises several objections listed under the standards for judicial review of administrative actions set forth in section 706[4] of the Act. We find, however, that the General Counsel's decisions are not presumptively reviewable under the APA. Section 701(a) of the Act exempts actions of an administrative agency from review if "statutes preclude judicial review" or if the decisions are "committed to agency discretion by law." 5 U.S.C. § 701(a) (1976). The exemption provided in section 701 of the APA applies in this case because section 3(d) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 153(d) (1976), vests in the General Counsel exclusive prosecutorial authority over unfair labor practices. The statute provides that the General Counsel "shall have final authority on behalf of the Board, in respect of the investigation of charges and issuance of complaint § under (the labor acts), and in respect of the prosecution of such complaints before the Board ...." Id. (emphasis added). Although the Supreme Court has not ruled on the reviewability of a decision by the General Counsel to withdraw and dismiss a complaint, section 3(d) of the LMRA has been construed to preclude review of the General Counsel's initial charging decisions. E.g., NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 155, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975); Pacific Southwest Airlines v. NLRB, 611 F.2d 1309, 1311 (9th Cir. 1980). The Court stated in Sears:
 
 
 17
 ... Congress has delegated to the Office of General Counsel 'on behalf of the Board' the unreviewable authority to determine whether a complaint shall be filed. 29 U.S.C. § 153(d); Vaca v. Sipes, 386 U.S. 171, 182 (87 S.Ct. 903, 912, 17 L.Ed.2d 842) (1967). In those cases in which he decides that a complaint shall issue, the General Counsel becomes an advocate before the Board in support of the complaint. In those cases in which he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first persuading the Office of General Counsel that his claim is sufficiently meritorious to warrant Board consideration.
 
 
 18
 421 U.S. at 138-39, 95 S.Ct. at 1510-1511.
 
 
 19
 The legislative history of section 3(d) confirms that the General Counsel's prosecutorial decisions are not subject to review by the Board or by a court. See NLRB, Legislative History of the Labor Management Relations Act, 1947, 541, 882, 1538, 1622-23 (1948). Prior to the enactment of the Taft-Hartley Act of 1947, the Board acted as prosecutor, judge, and jury in unfair labor practice cases. This arrangement generated considerable criticism; therefore, section 3(d) was added to separate the prosecutorial and adjudicatory functions by transferring the Board's prosecutorial authority to the General Counsel. See I. U. E. v. NLRB, 289 F.2d 757, 761 (D.C.Cir.1960). During the enactment of section 3(d), Senator Taft ackowledged that Congress was granting "vast and unreviewable" power to the General Counsel. NLRB, Legislative History, supra, at 1623. The senator described the General Counsel's role as similar to "the Attorney General of the United States or a State Attorney General." Id., cf. NLRB v. Sears, 421 U.S. 132, 156 n.22, 95 S.Ct. 1504, 1519 n.22, 44 L.Ed.2d 29 (1975) (the analogy to public prosecutor was criticized). We find that the legislative history does not support appellant's claim that the General Counsel's prosecutorial decisions are subject to direct review.
 
 III.
 Exceptions to the Rule
 
 20
 The Court indicated in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), that exceptions may exist to the general rule precluding review. The Court reviewed the record supporting a decision entered by the Board and determined that
 
 
 21
 (t)his suit is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.
 
 
 22
 Id. at 188, 79 S.Ct. at 183. Following the Supreme Court's example in Leedom, the Fifth Circuit added that a district court may review the Board's actions when they violate constitutional rights. Bova v. Pipefitters & Plumbers Local 60, 554 F.2d 226, 228-29 (5th Cir. 1977); Balanyi v. IBEW, 374 F.2d 723, 726 (7th Cir. 1967); Boire v. Miami Herald Publishing Co., 343 F.2d 17, 21, (5th Cir. 1965). Additionally, this court has alluded to a potential third exception for agency actions "wholly without basis in law." NLRB v. IBEW, Local 357, 445 F.2d 1015, 1016 n.2 (9th Cir. 1971).
 
 
 23
 Appellant points to no express provision in the labor acts which the General Counsel's decision clearly violates. Thus, the first exception is inapplicable to this case. We also find appellant's argument that the General Counsel's actions violated its constitutional rights similarly unconvincing. And insofar as appellant argues that the General Counsel's action constitutes a departure from the Board's precedent in United Steel Workers and Lynchburg Foundry, 192 NLRB 773 (1971), appellant apparently invokes the third exception for actions "wholly without a basis in law." This exception also is inapplicable in this case because, contrary to appellant's assertions, the General Counsel's action did not violate the Board's past precedent in Lynchburg.
 
 
 24
 In its constitutional argument, appellant asserts that the charging party has a "private right" in the prosecution of its unfair labor practice complaint and should be afforded a hearing before a complaint is withdrawn. Although the Supreme Court recognizes "that the charging party may have vital 'private rights' in the Board proceeding," International Union, Local 283 v. Scofield, 382 U.S. 205, 220, 861 S.Ct. 373, 382, 15 L.Ed.2d 272 (1965), there is no case holding this right to constitute a constitutional right for due process purposes. Moreover, in Saez v. Goslee, 463 F.2d 214 (1st Cir. 1972), the court opined that "it is doubtful that appellant has an 'entitlement' to have an unfair labor practice complaint issue in the same sense that, for example, a welfare recipient has a statutory entitlement to benefits." Id. at 215. Even assuming there is an entitlement, appellant fails to demonstrate that the existing procedures were not sufficient to protect its rights; appellant received a written explanation of the action taken by the General Counsel and was afforded an administrative appeal. The court in Goslee, examined the union's interest in the issuance of a charge and held that it did "not seem to be of a nature serious enough to warrant imposition of a hearing requirement." 463 F.2d at 215.
 
 
 25
 Turning to the purported third exception for actions "wholly without a basis in law," appellant assumes that the Board's decision in United Steel Workers and Lynchburg Foundry, 192 NLRB 773 (1971), indicates a broad approval of all union attempts to establish pooled ratification. Lynchburg, however, dealt with the narrow question of whether such ratification is per se illegal. Id. at 776. The administrative law judge, whose decision the NLRB adopted, held only that pooled voting was not per se illegal and that the particular facts of the case did not suggest that the procedure was designed to effect a merger of separate bargaining units. 192 NLRB at 779. The facts indicated that the purpose of pooled ratification was to maintain common contract expiration dates, a legitimate goal of collective bargaining. Id. at 778.
 
 
 26
 In this case, the union never presented the NLRB with any legitimate objectives to be achieved by pooled ratification. Additionally, the General Counsel's withdrawal notice and dismissal order specifically relied upon evidence indicating that the union unlawfully sought to force a merger of the separate Lockheed bargaining units. Thus, far from being wholly without basis in law, the General Counsel had sound legal grounds for his decision to withdraw and dismiss appellant's complaint.
 
 IV.
 
 27
 Appellant argues, however, that once the complaint is issued a private right is created and the complaint cannot be withdrawn without a hearing. The union urges that a distinction has been recognized between the issuance and the withdrawal of a complaint, either for purposes of the due process right to a hearing or the reviewability of the General Counsel's prosecutorial decision. The authorities relied upon by appellant, however, uniformly refer to settlements of complaints rather than decisions by the General Counsel to withdraw and dismiss a complaint. For example, appellant relies upon NLRB v. IBEW, Local 357, 445 F.2d 1015 (9th Cir. 1971), in which this court reviewed a settlement of a complaint. The settlement was based on certain factual findings that were challenged by the charging parties. Id. at 1016. This court held that an evidentiary hearing on the disputed facts was required. Other circuits similarly have ordered evidentiary hearings to consider objections raised by charging parties concerning the settlement of their complaints. See, e.g., Leeds & Northrup Co. v. NLRB, 357 F.2d 527 (3d Cir. 1966).
 
 
 28
 The only court of appeals that has considered the reviewability of the General Counsel's decision to withdraw and dismiss a complaint, George Banta Co., Inc. v. NLRB, 626 F.2d 354 (4th Cir. 1980), distinguished the cases dealing with settlements. We agree that the settlement of a charging party's complaint is distinguishable from a prosecutorial decision to withdraw and dismiss a complaint. Whereas a settlement involves the restructuring of the charging party's "private rights," a dismissal based on the decision that there is no merit to the charge is a different matter. In George Banta, the Fourth Circuit held that "the authority vested in the General Counsel over the prosecution of complaints 'must include the power to determine whether a complaint can be successfully prosecuted and, if he thinks not, to drop it.' " Id. at 356, quoting Local 282, Teamsters v. NLRB, 339 F.2d 795, 799 (2d Cir. 1964). As the court reasoned in George Banta,
 
 
 29
 ... jurisdiction to review General Counsel's prosecutorial decisions does not depend upon whether or not he has issued a complaint. It is the character of the decision which is critical. Where, as here, the decision is fundamentally prosecutorial-based essentially upon a determination that the available evidence will not support prosecution of the alleged violation-we hold that we lack jurisdiction to review.
 
 
 30
 626 F.2d at 356. The Fourth Circuit's analysis is applicable here because the decision not to prosecute the unfair labor practice complaint in this case was based upon the General Counsel's finding that the employer had a valid defense to the union's charge.
 
 
 31
 Our decision is in accordance with the language of section 3(d) because the statute provides that "final authority is vested in the General Counsel for both the issuance and the prosecution of complaints. For the reasons assigned, we hold that section 3(d) of the LMRA precludes review of a decision to withdraw a complaint when that decision is accompanied by a statement indicating the reasons for the action.
 
 
 32
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Section 3(d) provides, in pertinent part:
 The General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law.
 
 
 [2]
 Section 702 provides:
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
 
 
 [3]
 Section 704 provides in pertinent part:
 Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.
 
 
 [4]
 Section 706 provides in part:
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall-
 (1) compel agency action unlawfully withheld or unreasonably delayed; and
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be-
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right....