Patricia BAKER, Baird Bryant, Leslie Butler, Jean Clark, Kathy Dellar, Marcia Dripchak, Richard Eberhardt, Seven Gray, Charles Intrator, Renate Johnke, Willy Kurant, Jane Marcher, George Mooradian, David Parrish, Scott Peterson, Morteza Rezvani, Robin Rutledge, Louis Schwartzberg, Ben Sorbin, Terrence Thier, Robert Vose, Vera Zirn, Plaintiffs-Appellants,

v.

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE OPERATORS OF the UNITED STATES AND CANADA, An Unincorporated Association; International Photographers of the Motion Picture Industries, Local 659, International Alliance of Theatrical Employees and Moving Picture Machine Operators of the United States and Canada, An Unincorporated Association; Association of Motion Picture and Television Producers, Inc., a California Corporation; Contract Services Administration Trust Fund; National Labor Relations Board and its members: John H. Fanning, Howard Jenkins, Jr., John A. Penello, John C. Truesdale, Donald R. Klenk (Acting); Norton J. Come, General Counsel of the National Labor Relations Board (Acting), Defendants-Appellees.

No. CA 81–5217.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1982.

Decided Nov. 9, 1982.

Mark L. Warren, Santa Monica, Cal., for plaintiffs-appellants.

James Y. Callear, Washington, D.C., for defendants-appellees.

Before WALLACE and CANBY, Circuit Judges, and EAST,* District Judge.

CANBY, Circuit Judge:

The sole issue on appeal is whether the district court had subject matter jurisdiction to review a decision of the General Counsel of the National Labor Relations Board (NLRB) not to file unfair labor practice complaints. We agree with the district court that there was no jurisdiction, and we accordingly affirm the dismissal of the action.

## FACTS

Appellants are craft workers in the motion picture industry who seek to challenge the validity of an industry experience roster and seniority system. AMPTP [1] an employers' association, and IATSE [2], a union, are signatories to a "Standard Basic Agreement" that binds all employers in a single multi-employer bargaining unit. Under the Standard Basic Agreement, each employer in the unit must give preference in employment to persons who have worked for members of the multi-employer bargaining unit,

---

* The Honorable William G. East, District Judge, for the District of Oregon, sitting by designation.

1. The Association of Motion Picture and Television Producers, Inc.

2. The International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada.

but only if the work was performed or the worker was hired in Los Angeles County. To implement the Standard Basic Agreement, local craft unions have entered supplemental agreements and established experience rosters. Under the terms of the supplemental agreement with Local 659[3], employment preference must be given in accordance with roster placement. A person cannot be placed on the roster until he or she has worked 30 days for one unit employer or 90 of 365 days for several unit employers. In addition, for a limited open period during 1976, individuals who had worked for employers outside the bargaining unit were placed on the roster to cure past illegal discrimination that the NLRB had found to exist under a previous system.[4] All unit employees are required to become and remain members of the union on roster placement or within 30 days of first employment.

On July 10, 1979, eleven craft workers filed unfair labor practice charges with the NLRB, alleging that AMPTP and IATSE maintained an industry experience roster that denied initial employment because of union considerations, and that they enforced the roster system in an arbitrary and discriminatory manner, in violation of sections 8(a)(1) and (3), and 8(b)(1)(A) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 158(a)(1) and (3), (b)(1)(A). Additional unfair labor practice charges were filed on August 21, alleging that the signatory unions and the Contract Services Administration Trust Fund[5] violated § 8(b)(1)(A) and (2) of the Act. Finally, on November 11, a charge was filed against Local 659, alleging discrimination against a worker in violation of § 8(a)(3).

The Regional Director investigated the charges and refused to issue a complaint.

He found insufficient evidence of a *de facto* closed shop. He also determined that the roster system itself did not violate § 8. He found insufficient evidence of discrimination by Local 659. The Regional Director's decision not to issue a complaint was appealed to the General Counsel, who considered and denied the appeal principally on the basis of the rationale given by the Regional Director. Both decisions were in part based on an interpretation of the six month statute of limitations prescribed by § 10(b) of the LMRA (codified at 29 U.S.C. § 160(b)) to bar charges arising from roster placements made during the "post-MPO TV open roster period."

Dissatisfied with the General Counsel's decision the workers filed this action on June 10, 1980 against the General Counsel and the members of the NLRB[6]. The workers sought an order from the district court requiring the General Counsel to issue complaints in the cases described and in certain others arising from the same facts. The court dismissed the action for lack of subject matter jurisdiction.

## ANALYSIS

■ The General Counsel's decision not to issue an unfair labor practice complaint is generally not reviewable. *See e.g., Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 316, 99 S.Ct. 1123, 1131, 59 L.Ed.2d 333 (1979); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975); *International Ass'n of Machinists & Aerospace Workers v. Lubbers,* 681 F.2d 598 at 602–03 (9th Cir. 1982); *Pacific Southwest Airlines v. NLRB,* 611 F.2d 1309, 1311–12 (9th Cir. 1980). Appellants acknowledge

3. International Photographers of the Motion Picture Industries, Local 659, IATSE.

4. *IATSE, Local 659* (MPO–TV), 197 N.L.R.B. 1187, 81 LRRM 1223 (1972), *enf'd mem.* 477 F.2d 450 (D.C.Cir.1973), *cert. denied,* 414 U.S. 1157, 94 S.Ct. 914, 39 L.Ed.2d 109 (1974).

5. The Contract Services Administration Trust Fund is an organization established pursuant to

the terms of the collective bargaining agreement to process and approve applicants for roster membership.

6. Plaintiffs also sought lost wages and declaratory relief against AMPTP, IATSE, and Local 659. The district court dismissed the action against these non-governmental parties, but that dismissal is not the subject of this appeal.

this broad proposition, as they must in the light of the overwhelming precedent. They assert, however, that *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and some of its progeny establish an exception permitting review in this case. We disagree.

*Leedom v. Kyne* dealt with the certification by the NLRB of a union to represent both professional and non-professional employees, without first taking a vote of the professionals. Because § 9 of the National Labor Relations Act expressly prohibited certification under those circumstances, the Supreme Court made an exception to the usual rule that certification proceedings were not directly subject to judicial review. *See American Federation of Labor v. NLRB,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). It held that the district court had jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition of the Act." 358 U.S. at 188.[7]

■ Appellants would have us apply the *Leedom v. Kyne* exception to permit review by the district court to determine whether the General Counsel abused his discretion in refusing to file unfair labor practice complaints in this case. We decline the invitation. We note first that the *Leedom v. Kyne,* exception has been narrowly construed even in the certification context in which it arose. This court and others have refused to permit direct judicial review of

certification orders to determine whether the Board abused its discretion; direct review is permitted only where the clear mandate of the National Labor Relations Act prohibits the action of the Board. *Bays v. Miller,* 524 F.2d 631, 633 (9th Cir. 1979); *Physicians National House Staff Ass'n v. Fanning,* 642 F.2d 492, 496 (D.C.Cir.1980) (en banc), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *Chicago Truck Drivers v. NLRB,* 599 F.2d 816, 819 (7th Cir. 1979).

■ We think that there are sound reasons why the *Leedom v. Kyne* exception ought to be construed at least as narrowly in its possible application to a refusal by the General Counsel to issue a complaint as it is in the certification area. These reasons arise from the structure of the Act and its consistent interpretation by courts to preclude judicial review of the General Counsel's determinations. Prior to 1949, the Board itself determined whether to issue complaints pursuant to § 10(b) of the Act[8], which empowered the Board to issue complaints but did not compel it to do so.[9] *See NLRB v. Indiana & Michigan Electric Co.,* 318 U.S. 9, 18, 63 S.Ct. 394, 400, 87 L.Ed. 579 (1943). In exercising its discretion, the Board was acting within its authority to determine administrative labor policy, and its decision was not considered to be subject to judicial review. *Jacobsen v. NLRB,* 120 F.2d 96, 100 (3d Cir. 1941) (en banc). By the enactment of Section 3(d) of the Act[10],

---

**7.** Jurisdiction in *Leedom v. Kyne* was based upon 28 U.S.C. § 1337. It was conceded by the parties that jurisdiction existed under that statute unless the review provisions of the National Labor Relations Act precluded it. Appellants in the present case similarly assert jurisdiction under § 1337.

**8.** Section 10(b), 29 U.S.C. § 160(b) provides in pertinent part:

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board. . . .

**9.** The permissive language of § 10(b) is in sharp contrast to the mandatory language of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 482(b), which requires the Secretary of Labor to investigate complaints of violations of that Act and bring a civil action if he finds probable cause to believe that a violation has occurred and has not been remedied. The Secretary's determination under the statute was subjected to limited judicial review in *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

**10.** Section 3(d), 29 U.S.C. § 153(d) provides in pertinent part:

There shall be a General Counsel of the Board who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years. . . . He

as part of the Taft-Hartley Amendments of 1947, Congress delegated to the General Counsel the Board's authority to issue complaints. It did not, however, modify the terms of the underlying grant of authority. The General Counsel was accordingly empowered to issue complaints, but not compelled to issue them. *Haleston Drug Stores v. NLRB,* 187 F.2d 418, 421 (9th Cir. 1951). Moreover, § 3(d) conferred upon the General Counsel "final authority on behalf of the Board," to investigate charges of unfair labor practices and to issue complaints. At the time of these amendments, the power to decide whether to issue complaints was characterized in the congressional debates as unreviewable.[11] An object of its transfer was to centralize this power in the hands of an officer responsible to the President and the Congress. H.R.Rep.No.510, 80th Cong., 1st Sess. 1, 37, 51 *reprinted in* 1947 U.S. Code Cong.Serv. 1135, 1142, 1159 *and in* 1 NLRB, *Legislative History of the Labor Management Relations Act,* 1947, at 505, 541, 557 (1948). While this legislative history may not be conclusive [12] we view it as sufficient to support the consistent judicial interpretation of the Act as intending the General Counsel's discretion to be checked by his political responsibility rather than by judicial review. *See Associated Builders & Contractors, Inc. v. Irving,* 610 F.2d 1221, 1224–25 (4th Cir.), *cert. denied,* 446 U.S. 965, 100 S.Ct. 2941, 64 L.Ed.2d 823 (1979); *Dunn v. Retail Clerks International Ass'n,*

307 F.2d 285, 289 (6th Cir. 1962). Thus the Supreme Court, in requiring disclosure of memoranda explaining his reasons for not issuing a complaint, has described the role of the General Counsel as follows:

> In those cases in which he decides that a complaint shall issue, the General Counsel becomes an advocate before the Board in support of the complaint. In those cases in which he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first persuading the General Counsel that his claim is sufficiently meritorious to warrant Board consideration.

*NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–11, 44 L.Ed.2d 29 (1975). The Act, then, leaves with the General Counsel the power, originally exercised by the Board, to make the sometimes policy-laden determination whether to issue a complaint and seek vindication of rights primarily regarded as public. *See Vaca v. Sipes,* 386 U.S. 171, 182 n. 8, 87 S.Ct. 903, 912 n. 8, 17 L.Ed.2d 842 (1967); *Amalgamated Utility Workers v. Consolidated Edison Co.,* 309 U.S. 261, 264–65, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940). The scheme of the Act is not to involve the courts in that policy determination.

shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law.

11. Senator Taft, the LMRA's co-sponsor, responding to critics of the General Counsel's power stated:

What the conference amendment does is simply to transfer this "vast and unreviewable power" from this anonymous little group [of NLRB staff] to a statutory officer responsible to the President and to Congress. So far as having unfettered discretion is concerned he, of course, must respect the rules of decision of the Board and the courts. In this respect

his function is like that of the attorney general.

93 Cong.Rec. 7001, *reprinted in* 2 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 7622 (1948). While it has been suggested that Senator Taft's reference to respecting the decisions of the Board and the courts might have referred to judicial review of the General Counsel's decision, see Rosenblum, *A New Look at the General Counsel's Unreviewable Discretion Not to Issue a Complaint Under the NLRA,* 86 Yale L.J. 1349, 1354–55 (1977), it seems far more likely that he was referring to a moral command. His comparison of the General Counsel to the Attorney General, who exercises unreviewable prosecutorial discretion, supports the latter interpretation.

12. *See* Rosenblum, *supra* note 11, at 1353–59.

■ The numerous attempts to secure judicial review of the General Counsel's decision not to issue unfair labor practice complaints have therefore all ended in failure.[13] It is true, however, that in rejecting these attempts several courts, including this one, have acknowledged the possibility that under extreme circumstances judicial review of the General Counsel's decision might be available, and it is this possibility which the appellants here seek to avail themselves. In *International Ass'n of Machinists and Aerospace Workers v. Lubbers,* 681 F.2d 598 (9th Cir. 1982), we discussed three categories of exceptions urged by parties seeking judicial review of the General Counsel's actions. The first was taken directly from holding of *Leedom v. Kyne:* "actions in excess of . . . delegated powers and contrary to a specific prohibition in the Act." *International Ass'n of Machinists* at 603 (quoting *Leedom v. Kyne,* 358 U.S. at 188, 79 S.Ct. at 183). Appellants in the present case make no showing that the General Counsel acted entirely outside his authority and that his refusal to issue a complaint violated an express congressional command.

The second category of exception discussed was for actions violating constitutional rights. *Id.* at 603, citing *Bova v. Pipefitters & Plumbers Local 60,* 554 F.2d 226, 228–29 (5th Cir. 1977). Appellants do not contend that their constitutional rights have been violated, and it is accordingly unnecessary for us to rule upon the validity of such an exception to the rule of nonreviewability.

The third category of exception discussed in *International Ass'n of Machinists,* was a "purported" exception for actions "wholly without basis in law," *id.* at 603–04, an exception that this court had previously said "may" exist. *NLRB v. IBEW, Local*

*357,* 445 F.2d 1015, 1016 n. 2 (9th Cir. 1971). It is toward this exception that appellants' contention are essentially directed. They argue that the General Counsel acted contrary to law and abused his discretion in: (1) concluding that the roster and seniority system did not violate the Act as interpreted by the Board in *IATSE Local 659 (MPO–TV) v. NLRB,* 19 N.L.R.B. 1187 (1972); (2) ignoring the alleged applicability of § 8(f)(4) of the Act, 29 U.S.C. § 158(f)(4); and (3) invoking the six month limitations period of § 10(b), 29 U.S.C. § 160(b), with respect to violations allegedly arising during the open period of 1976. Without dwelling on the merits of these arguments, we think that their very nature illustrates the unsoundness of an exception that would permit judicial review of the General Counsel's decision for abuse of discretion, even where the alleged abuse consists of a misinterpretation of law. Review of the legal and factual determinations made by the General Counsel in this case, even under a standard of probable cause, would inject us into determinations of labor policy at a point well before that selected by Congress for judicial review. So interpreted, the exception for actions of the General Counsel "wholly without basis in law" would threaten to swallow the rule of nonreviewability. We consequently do not accept that interpretation. The most that the congressional scheme permits is judicial intervention to prevent the General Counsel from taking action in violation of the kind of express statutory command involved in *Leedom v. Kyne.*[14] If more is to be done, Congress will have to authorize it.

We confess that it is difficult to imagine a situation where the refusal of the General Counsel to issue a complaint would violate

---

**13.** *International Ass'n of Machinists v. Lubbers,* 681 F.2d 598 (9th Cir. 1982); *Lincourt v. NLRB,* 170 F.2d 306, 307 (1st Cir. 1948); *National Maritime Union v. NLRB,* 423 F.2d 625, 626–27 (2d Cir. 1970); *Local 187 v. NLRB,* 489 F.2d 416, 426 (3d Cir. 1973); *Associated Builders and Contractors, Inc. v. Irving,* 610 F.2d 1221, 1226–28 (4th Cir.), *cert. denied,* 446 U.S. 965, 100 S.Ct. 2941, 64 L.Ed.2d 823 (1980); *Hernandez v. NLRB,* 505 F.2d 119, 120 (5th Cir.

1974); *Tensing v. NLRB,* 519 F.2d 365 (6th Cir. 1975); *Balanyi v. Local 1031, IBEW,* 374 F.2d 723, 726 (7th Cir. 1967); *General Drivers, Local 886 v. NLRB,* 179 F.2d 492, 494–95 (10th Cir. 1950).

**14.** The purported third exception of *International Ass'n of Machinists, supra,* therefore merges into the first exception, but does not enlarge it.

an express statutory command of the Act as it now exists, because nothing in it requires the General Counsel to issue complaints upon the finding of a violation. As we have already pointed out, his statutory authority is permissive. 29 U.S.C. §§ 153(d), 160(b). That fact is one of the reasons why, even if judicial review of the General Counsel's legal conclusions were permitted, the relief sought by appellants—a court order directing the issuance of unfair labor practice complaints—would not be appropriate.

Appellants here show no violation of the type of express statutory command involved in *Leedom v. Kyne.* Their allegations that the General Counsel misinterpreted provisions of the Act defining unfair labor practices or establishing a limitations period fall far short of that mark. The Act therefore precludes review of the General Counsel's decision and defeats the jurisdiction asserted under 28 U.S.C. § 1337[15]. The district court's dismissal was correct and is affirmed.

---

**15.** The decision not to issue a complaint is therefore excepted from the review provisions of the Administrative Procedure Act as a deci-sion committed to agency discretion by law. 5 U.S.C. § 701(a)(2) (1970). *International Ass'n of Machinists, supra,* at 602.