Robert J. MOHAT, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondents,

and

International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers (IUE), and its Local 795, Intervenors.

No. 99–6188.

United States Court of Appeals,
Sixth Circuit.

Jan. 8, 2000.

Before MERRITT and SILER, Circuit Judges, SARGUS, District Judge.*

SILER, Circuit Judge.

Petitioner, Robert J. Mohat, appeals the National Labor Relations Board's decision and order rejecting claims that his employer and union infringed on his § 7 right to refrain from union membership by enforcing an invalid union-security clause and by failing to honor the revocation of his dues-checkoff authorization after he resigned from the union. For the following reasons, we enforce the order in part and remand in part.

## BACKGROUND

Since 1981, Mohat's employer, Polymark Corporation ("Employer"), and Local 795 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers ("Union") have included a union-security clause in three successive collective-bargaining agreements ("CBAs") stating:

> It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its

effective date shall, on the sixty-first calendar day following the beginning of such employment, become and remain members in good standing in the Union.

The CBA also includes a dues-checkoff provision whereby the Employer deducts monthly dues from the employees' wages for payment to the Union.

After his probationary period, he joined the Union and signed a dues-checkoff authorization assignment in 1986. In 1990, he read a newspaper article regarding the Supreme Court's decision in *Communications Workers of America v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), and the practice of using members' fees for political purposes. In a September 1990 letter to the Union's treasurer, Mohat requested a return of dues used for non-representational purposes and for information on the percentage of dues used exclusively for representation based on *Beck.* In its reply, the Union stated that *Beck* did not apply to union members and that non-members could request a reduction in fees during the "window period" as published in the Union's newsletter.

In November 1990 by letter, Mohat resigned from the Union, objected to the use of his fees for political purposes, and stated his intention to file charges. The Union replied that despite his resignation, he was obligated to pay union dues based on the union-security clause, and he could request a reduction of fees during the April 1991 "window period." Mohat also sent a letter to Polymark notifying it of his resignation from the union, revoking his dues-checkoff authorization, and stating his intention to file charges with the NLRB. Polymark responded that it would continue to withhold the full membership dues because it

---

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

had not received notice from the Union to reduce them.

In December 1990, Mohat filed unfair labor practice charges against his Employer and the Union with the NLRB. In his September 1992 decision and order, the Administrative Law Judge (ALJ) held that the union security clause was facially valid; the Employer committed an unfair labor practice when it failed to honor Mohat's dues-checkoff revocation; the Union's policy to reduce fees for resigned members only during the "window period" violated Mohat's § 7 rights; and the Union failed to inform Mohat of his *Beck* rights within a reasonable time. Upon appeal, the NLRB's September 1999 order upheld the validity of the union-security clause, reversed the finding that the Employer violated Mohat's rights by continuing payroll deductions, affirmed the ALJ's decision that the Union violated § 7 when it failed to honor Mohat's *Beck* objection upon his resignation, and reversed the finding that the Union failed to give proper notice of *Beck* rights.

## ANALYSIS

"The Board's legal conclusions are reviewed de novo, but its findings of fact and application of law to fact are subject to the 'substantial evidence' standard." *Opportunity Homes, Inc. v. NLRB*, 101 F.3d 1515, 1518 (6th Cir.1996) (citing *NLRB v. Pentre Electric, Inc.*, 998 F.2d 363, 368 (6th Cir. 1993)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### A. Union Security Clause Validity Claim

■■■ Employees have the right to refuse to join a union, and an employer or union that restrains, coerces or discrimi-

nates against an employee who exercises this right commits an unfair labor practice. *See* 29 U.S.C. §§ 157, 158(a)(1), 158(a)(3), 158(b)(1)(A) (also known as §§ 7 and 8 of the NLRA). A union also has a duty of fair representation whereby it must serve the interests of all members of the bargaining unit, and it breaches this duty if its conduct toward an employee is arbitrary, discriminatory, or in bad faith. *See* 29 U.S.C. § 158(b)(1)(A); *see also Marquez v. Screen Actors Guild, Inc.* 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). While union-security clauses can be included in CBAs, they cannot require full union membership and employees retain the right to resign from a union. *See* 29 U.S.C. § 158(a)(3); *see also Marquez*, 525 U.S. at 47–48; *Pattern Makers' League v. NLRB*, 473 U.S. 95, 106, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985). Under such clauses, a union can demand "those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issue'" whether an employee is a member or nonmember. *Beck*, 486 U.S. at 762–63.

■■■ Mohat does not challenge the ALJ's and Board's determination that the union-security clause is valid as it tracks the language of § 8(a)(3). Rather, he argues that it is invalid because his Employer attempted to enforce it as a mandate for full union membership. This theory was not raised before the Board, however. Under 29 U.S.C. § 160(e), a court of appeals cannot review an objection that has not been urged before the Board unless extraordinary circumstances excuse the failure or neglect to urge such an objection. *See NLRB v. Robin American Corp.*, 667 F.2d 1170, 1171 (5th Cir.1982). Mohat claims extraordinary circumstances based on the elimination of his facially invalid claim by the intervening *Marquez*

decision and the futility of filing a motion for reconsideration based on the Board's seven year delay in deciding his case. The pronouncement of intervening decisional law suggesting a new policy does not justify appellate review as an extraordinary circumstance, however. *See NLRB v. Int'l Health Care, Inc.*, 898 F.2d 501, 507 (6th Cir.1990) (citing *Robin American Corp.*, 667 F.2d at 1171 which states that such circumstances arise when the Supreme Court eliminates previously controlling precedent). As such, Mohat's newly formulated invalid-by-enforcement claim is barred from consideration by this court.

### B. Adequate Notice Claim

Mohat alleges that the Union failed to provide a sufficient *Beck* rights notice in its newsletter or a sufficient separate notice to non-union members and employees who have resigned from the union. As the ALJ acknowledged, "the General Counsel did not challenge the adequacy of the notices in the *IUE News*, nor the breakdown of the union dues, nor the procedure to challenge the breakdown of the dues." Rather, the complaint alleges that the Union violated the NLRA by maintaining a facially invalid union-security clause and failing to reduce Mohat's dues upon his resignation as a member. Under 29 U.S.C. § 153(d), the General Counsel is vested with the sole power to determine the issues raised in a complaint, and the decision to omit an issue is final and unreviewable. *See Williams v. NLRB*, 105 F.3d 787, 790–91 n. 3 (2d Cir.1996) (citations omitted). Thus, we affirm the Board's determination that this issue is not reviewable.

### C. Unfair Trade Practice Claim—Employer

Both the ALJ and the Board held that the Union violated § 8(b)(1)(A) by refusing to honor Mohat's *Beck* objection and reduce his dues and fees accordingly after his resignation from the union. As part of the remedy, the Board ordered the Union to accept from Mohat the reduced fees and dues owed by a perfected *Beck* objector from the date of his resignation. *See Polymark Corp.*, 329 NLRB 7, 4, 1999 WL 692098 (1999). Neither the Union nor Mohat appeals this issue. Rather, Mohat argues that his Employer violated the NLRA by not honoring his dues-checkoff revocation as the card's authorization to collect membership dues ended when he resigned from the union based on *IBEW Local 2088 (Lockheed Space Operations)*, 302 NLRB 322, 328, 1991 WL 67020 (1991). In this case, the Employer and Union included a dues-checkoff provision in the union-security clause stating that once an employee so authorizes, the Employer would deduct all fees, dues and assessments owed from the employee's wages for payment to the Union. The Board argues that *Lockheed Space Operations* applies only to cases involving invalid union-security clauses, so Mohat's dues-checkoff authorization cannot be revoked outside of the designated window period. *See Williams v. NLRB*, 105 F.3d 787, 791–92 (2d Cir.1996). For the following reasons, this court holds that the Employer violated § 8(a)(1) and (3) when it refused to honor Mohat's dues-checkoff authorization revocation.

The policy of "voluntary unionism" applies to union membership and other forms of union activity. *See Lockheed Space Operations*, 302 NLRB at 328; *see also* 29 U.S.C. §§ 157, 158; *Pattern Makers' League*, 473 U.S. at 104–05. Under § 8(a)(3), "membership" under a valid union-security clause has a special meaning under which a non-member is obligated to pay for those representational costs derived from dealing with an employer on labor-management issues. *See Marquez*,

525 U.S. at 296–97; *Beck,* 486 U.S. at 762–63. The dues-checkoff authorization at issue here is a contract executed by Polymark and Mohat that is separate from the union-security clause. *See Lockheed Space Operations,* 302 NLRB at 327. It assigns to the Union a right to receive from the Employer a portion of Mohat's wages for payment of "membership dues." *See id.* Neither the NLRA nor *Marquez* defines "membership" under a dues-checkoff authorization to carry the same meaning as it does under the union-security clause. While in *Lockheed Space Operations* the Board examined a dues-checkoff authorization without a valid union security clause, its principles apply likewise to this case.

The dues-checkoff authorization at issue here provides for a method of paying union membership dues only, and does not contain a clear statement that the assignment would be enforced for *Beck* obligations. While Mohat is obligated to pay for representational costs under the union-security clause, the Employer did not have Mohat's voluntary consent to continue the dues-checkoff assignment for membership dues once he notified the company of his resignation from the union and his intent to revoke the authorization. *See id.* at 328–29. By enforcing a void dues-checkoff authorization, Polymark committed an unfair labor practice in violation of § 8(1)(1) and (3).

## CONCLUSION

We AFFIRM the Board's determination in regard to the facial validity of the union-security clause and the non-reviewable adequate notice claim. Further, we REVERSE the Board's finding regarding the claim that the Employer violated the Act and REMAND this to the Board for further proceedings consistent with this opinion.