Clifford **WILLIAMS**, Petitioner,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent,

International Union, UAW and UAW Local 1752, Intervenor.

### No. 1953, Docket 96–4033.

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1996.

Decided Nov. 25, 1996.

---

W. James Young, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for Petitioner.

Nancy B. Hunt, Attorney, National Labor Relations Board, Washington, DC (Frederick L. Feinstein, General Counsel of National Labor Relations Board, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, of counsel), for Respondent.

Before: NEWMAN, Chief Judge, LUMBARD and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

This case concerns the meaning of the term "membership" as it was used in an employee's dues checkoff authorization. Be-

cause we conclude that the National Labor Relations Board ("NLRB" or the "Board") acted reasonably in construing that term, we leave the Board's decision undisturbed.

## BACKGROUND

United Automobile, Aerospace & Agricultural Implement Workers Union of America and its Local No. 1752 (collectively "the Unions") represent the employees at the Big Flats, New York, manufacturing facility of Schweizer Aircraft Corporation (the "Company"). Petitioner Clifford Williams has been employed by the Company since 1967.

Shortly after beginning his employment, Williams signed a dues checkoff authorization that stated: "I hereby assign to [the Unions] from any wages earned or to be earned by me as your employee ... such sums as the Financial Officer of said [Unions] may certify as due and owing from me as membership dues, including an initiation or reinstatement fee and monthly dues...." The dues checkoff authorization further provided that it could only be revoked during a ten-day window each year. *See generally* 29 U.S.C. § 186(c)(4) (permitting dues checkoff authorizations).

The collective-bargaining agreement between the Unions and the Company contained the following union-security clause:

The Company agrees that employees now in jobs covered by this Agreement, and employees employed after the signing of this Agreement shall on and after thirty (30) days from the date of their employment, become and remain members of the Union as a condition of continued employment, provided that nothing herein shall be interpreted to cause a violation of the Labor Management Relations Act of 1947 or any other applicable law.

*See generally* 29 U.S.C. § 158(a)(3) (permitting union-security clauses).

On December 19, 1990, Williams resigned from the Unions. This action was not inconsistent with the union-security clause; the Supreme Court has recognized an employee's right to resign union membership, even in the presence of a such a clause. *See Pattern Makers' League v. NLRB,* 473

U.S. 95, 106, 105 S.Ct. 3064, 3071, 87 L.Ed.2d 68 (1985). The employee who "resigns" still remains liable under the union-security clause to pay "membership" dues, *Communications Workers v. Beck,* 487 U.S. 735, 752–54, 108 S.Ct. 2641, 2652–53, 101 L.Ed.2d 634 (1988), but those dues do not represent the entire amount that full members of the union must pay:

Under ... § 8(a)(3), the burdens of membership upon which employment may be conditioned [in a union-security clause] are expressly limited to the payment of initiation fees and monthly dues. It is permissible to condition employment upon membership, but membership, insofar as it has significance to employment rights, may in turn be conditioned only upon payment of fees and dues. "Membership" as a condition of employment is whittled down to its financial core.

*NLRB v. General Motors Corp.,* 373 U.S. 734, 742, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963). Thus, a union-security clause "authorizes the exaction of only those fees and dues necessary to performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues." *Beck,* 487 U.S. at 762–63, 108 S.Ct. at 2657 (citation and internal quotation marks omitted). It does not oblige employees "to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." *Id.* at 745, 108 S.Ct. at 2648.

Consistent with the Supreme Court's decision in *Beck,* the Unions reduced Williams's "membership" dues to 79.64% of normal dues to reflect his decision to resign. They instructed the Company to diminish the amount of Williams's dues checkoff immediately.

In August 1991, eight months after his resignation, Williams attempted to revoke his dues checkoff authorization on the ground that he was no longer a member of the Unions. Although the window during which Williams was permitted to revoke the authorization was not yet open—it ran from September 8 through 18 each year—the Company nonetheless honored his demand. The Unions responded by filing a grievance

against the Company, alleging that the Company should not have honored Williams's untimely request to revoke his dues checkoff authorization. The Unions and the Company settled their differences in February 1992.

Williams subsequently charged the Unions with violating Sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(b), by filing their grievance against the Company. Section 8(b)(1)(A) provides that "[i]t shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in [Section 7 of the Act]."[1] 29 U.S.C. § 158(b)(1)(A). Section 8(b)(2) provides that "[i]t shall be an unfair labor practice for a labor organization or its agents to cause or attempt to cause an employer to discriminate against an employee in violation of [Section 8(a)(3) ]."[2] 29 U.S.C. § 158(b)(2). The General Counsel of the NLRB issued a complaint against the Unions on August 12, 1993. On November 16, 1993, the General Counsel filed a motion for summary judgment, along with a motion to transfer the proceeding directly to the Board. The Board transferred the proceeding two days later, and the Unions soon answered with their own summary judgment motion.

On December 22, 1995, the Board, by a three to one vote, granted the Unions' summary judgment motion, concluding that their actions did not constitute an unfair labor practice. *Schweizer Local No. 1752(UAW)*, 320 N.L.R.B. No. 39, 1995 WL 793264 (1995). Williams now petitions for review of that decision.

## DISCUSSION

■■■ Our review of NLRB decisions is quite limited. "When the Board's construction of the Act is an acceptable reading of the statutory language and a reasonable interpretation of the purposes of the relevant statutory sections, its decision will not be overturned." *NLRB v. National Broad. Co., Inc.*, 798 F.2d 75, 77 (2d Cir.1986) (citations and internal quotation marks omitted). So long as the Board's "construction of the statute is reasonably defensible, it should not be rejected." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). And the Board's decision that a violation of the Act did not occur "must be upheld unless it has no rational basis." *International Ladies' Garment Workers Union v. NLRB*, 463 F.2d 907, 919 (D.C.Cir.1972). Applying that standard to the instant case, we cannot disturb the Board's decision.

It is undisputed that Williams still owes 79.64% of full membership dues pursuant to *Beck*. The only question before the Board and before this Court[3] is whether the Unions

---

1. Section 7 provides that:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by [a union-security] agreement requiring membership in a labor organization as a condition of employment as authorized in [Section 8(a)(3) ].

   29 U.S.C. § 157.

2. Section 8(a)(3) provides, in pertinent part, that [i]t shall be an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter ... shall preclude an employer from making [a union-security] agreement with a labor organization

... to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment....

29 U.S.C. § 158(a)(3).

3. Williams asks this court to consider the validity of the union-security clause itself. This we cannot do, as the issue is not properly before us. The General Counsel of the NLRB has the discretion to decide whether or not to issue a complaint, *see, e.g., NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 124–25, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987), and to determine which issues to include in that complaint. "Section 3(d) of the Act [29 U.S.C. § 153(d) ] leaves to the general counsel the decision as to what is and what is not at issue in an unfair labor practice [case]." *Winn–Dixie Stores, Inc. v. NLRB*, 567 F.2d 1343, 1350 (5th Cir. 1978); *see also IBEW, Local Union 903*, 230 N.L.R.B. 1017, 1019–20, 1977 WL 8893 (1977) ("[T]o permit the Charging Party to introduce ... evidence to support theories of violations

were wrongly permitted to require that this amount be deducted directly from Williams's paycheck pursuant to his dues checkoff authorization. Relying on the rule that in interpreting dues checkoff agreements, "[t]he touchstone is ... the scope of the employee's voluntary authorization," *United Food & Commercial Workers Dist. Union Local One v. NLRB*, 975 F.2d 40, 45 (2d Cir.1992), Williams contends that the Board's decision was erroneous. According to Williams, we can infer from the fact that the checkoff authorized the deduction of "membership dues" that Williams's intent at the time that he signed the checkoff form was to permit dues to be deducted from his paycheck only if he remained a full member of the Unions.

On this score, Williams relies heavily on *IBEW Local No.2088 (Lockheed Space Operations)*, 302 N.L.R.B. 322, 1991 WL 67020 (1991). In *Lockheed*, he argues, the Board faced a similar factual situation, and held that "[i]f the employee did not agree, when he signed the authorization, to have 'regular membership dues' deducted even when he is no longer a union member, then the employee's continued financial support of the union is not clearly 'voluntary' after he has resigned." *Id.* at 328. According to Williams, the reasoning in *Lockheed* should be dispositive.

But Williams does not accurately characterize the *Lockheed* decision. In *Lockheed* the Board held that "[t]he policy [of voluntary unionism] warrants the application of a test that will assure that the extraction of moneys from an employee's wages to assist a union, *if not authorized by a lawful union-security clause*, is in accord with an employee's voluntary agreement." *Id.* (emphasis

added). As such, the Board held that it would require in the dues checkoff authorization a "clear and unmistakable waiver" of the employee's Section 7 right to refuse to assist the union before it would allow the union to enforce the authorization after the employee had resigned from union membership. *Id.* In footnote 26 of the *Lockheed* decision, the Board explicitly reserved the question of whether the same analysis would apply in a case in which the employee was subject to a union-security clause:

A different situation exists when an employee is subject to a lawful union-security clause under which members and nonmembers alike have an obligation to provide dues to their collective-bargaining representative either by checkoff or some other means. Such clauses often literally require "membership," ... but as the Supreme Court has held, the requirement that an employee remain a "member" refers to membership "whittled down to it financial core," i.e., the payment of dues and fees. When a union can establish the dues obligation through a valid union-security clause, the checkoff authorization merely affects the manner of payment of dues which the employee will continue to owe, in at least some amount, regardless of any attempt to resign. Here the sole basis cited by the Respondent for continuing to extract membership dues after an attempt to resign is the checkoff authorization itself, so we need not decide how we would construe a similar checkoff authorization for an employee whose dues obligation continues on other grounds after resignation.

*Id.* at 329 n. 26 (citations omitted).

■■■ In the instant case, the Board decided that open question. The Board distin-

[other] than the theory relied upon by the General Counsel, is tantamount to granting to the Charging Party authority to amend the complaint in derogation of the authority of the General Counsel who has exclusive authority as to the issuance and conduct of the complaint."), *enforced*, 574 F.2d 1302 (5th Cir.1978). In the instant case, the General Counsel did not challenge the validity of the union-security clause. In fact, in a prior case, the General Counsel dismissed Williams's allegation that the same union-security clause was invalid. Since the General Counsel's refusal to include an issue in the complaint is final and unreviewable, *NLRB v. Combined Century Theatres, Inc.*, 278 F.2d 306,

309 n. 2 (2d Cir.1960); *International Ass'n of Machinists and Aerospace Workers v. Lubbers*, 681 F.2d 598, 603 (9th Cir.1982) ("[T]he General Counsel's prosecutorial decisions are not subject to review by the Board or by a court."), we are precluded from reaching the issue. *See Wellington Mill Div., West Point Mfg. Co. v. NLRB*, 330 F.2d 579, 591 (4th Cir.1964) ("The Union asks this court's judgment on the merits of a matter never properly put in issue and not passed upon by the Board. Its request must be denied. A court has no power to order the General Counsel to issue a complaint and no power to require the Board to issue an order in a matter which is not before it.") (footnote omitted).

guished *Lockheed* by explaining that the essence of the *Lockheed* decision was that if the employee were not permitted to make an untimely revocation of his checkoff authorization, he would be forced to pay dues that he did not owe to the union. This would violate his Section 7 right to refrain from supporting the union. But in Williams's case, compelling the employee to honor his dues checkoff authorization did not violate his right to refrain from assisting the Unions, since he was forced to pay no more money to the Unions than he lawfully owed anyway under the union-security clause. Williams's "resignation from the Respondent Unions and his untimely attempt to revoke his dues-checkoff authorization could in no way negate his continued obligation to assist the Respondents by payment of dues at least in some amount." *Schweizer*, 320 N.L.R.B. No. 39 at 4.[4] As a result, the Board concluded that *Lockheed* was inapposite.

Having distinguished *Lockheed,* the Board held that when an employee who is subject to mandatory union "membership" under a union-security clause signs a dues checkoff authorization, "the employee agrees to a particular method for paying whatever dues and fees can be lawfully required of him pursuant to the union-security clause." *Id.* at 5. Since, under Section 8(a)(3), the "membership" that can be required by a union-security clause and from which an employee cannot resign includes the obligation to pay diminished dues to support union activities that are germane to collective bargaining, contract administration, and grievance adjustment, *Beck,* 487 U.S. at 745, 108 S.Ct. at 2648, the Board held that Williams, when he authorized the checkoff of "membership"

dues, permitted the Unions to require the deduction of these reduced dues from his paycheck, even after he resigned from *full* membership in the Unions.

 We long ago found it reasonable "for the Board to view checkoffs authorized during the term of a union security agreement as being made under the influence of that agreement." *NLRB v. Penn Cork & Closures, Inc.,* 376 F.2d 52, 56 (2d Cir.1967). Consonant with that principle (and provided that an employee has no Section 7 right to choose the method of paying his lawful union obligations (*see supra* note 4)), we now hold that it was reasonable for the Board to have concluded that when an employee who is subject to a union-security clause agrees to have "membership dues" deducted from his paycheck, he agrees that his employer will deduct whatever "membership dues" he owes under the union-security clause. It follows that even if the employee resigns from full membership in the union, the union is still permitted to insist that the employer deduct the amount of the employee's reduced, "financial core membership dues." And the union can continue to require this until the employee executes a timely revocation of his dues checkoff authorization, until, that is, he acts during the ten day revocation window.

## CONCLUSION

We will not reverse reasonable findings by the Board. We therefore deny the petition to review the NLRB's decision.

---

4. The Board went on to state that "the checkoff authorization itself concerned only the administrative method of paying that lawfully enforceable obligation; and Section 7 of the Act contains no specific rights pertaining to that method." *Schweizer,* 320 N.L.R.B. No. 39 at 4–5. We note that the finding that there is no Section 7 right to choose the administrative device by which one's financial obligations to a union are satisfied is by no means obvious. See, e.g., *United Food and Commercial Workers,* 975 F.2d at 43 (affirming the Board's finding of a Section 7 right partially to revoke a dues checkoff authorization and to choose instead to satisfy an admittedly-owing financial obligation

directly); *Brotherhood Ry. Carmen, Lodge 365 v. NLRB,* 624 F.2d 819, 821 (8th Cir.1980) (violation of Section 8(b)(1)(A) when union deducts lawfully-owed assessment from employee's salary pursuant to a dues checkoff authorization that did not expressly authorize the deduction of this type of assessment); *AMF Wheel Goods Division,* 247 N.L.R.B. 231, 233, 1980 WL 11026 (1980) ("[I]t is well established that an employee has a right under Section 7 of the Act to refuse to sign an authorization card for a dues checkoff."). But Williams does not challenge this finding on appeal, and we therefore have no occasion to review this aspect of the Board's reasoning.