10-3448-ag(L)
*Rochester Gas & Elec. Corp. v. Nat'l Labor Relations Bd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: November 15, 2011                     Decided: January 17, 2013)

Docket Nos. 10-3448-ag(L), 11-247-ag(CON), 11-329-ag(CON)

_____

LOCAL UNION 36, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO,

*Petitioner*,

ROCHESTER GAS & ELECTRIC CORP.,

*Petitioner-Cross-Respondent*,

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent-Cross-Petitioner*.

_____

Before: CABRANES, STRAUB, and LIVINGSTON, *Circuit Judges*.

Local Union 36 of the International Brotherhood of Electrical Workers and Rochester Gas and Electric Corp., petition for review of the August 16, 2010 decision of the National Labor Relations Board (the "Board"), finding that Rochester Gas had engaged in unfair labor practices when it refused to bargain over the effects of its decision to discontinue its policy of permitting Union members to take company vehicles home at night (the "Vehicle Policy Change"). In support of its petition, Rochester Gas argues that the Union, by operation of a provision of the collective

bargaining agreement ("CBA") between the parties, waived its right to bargain over the effects of the Vehicle Policy Change. In support of its cross-petition, the Union argues that the CBA required Rochester Gas to bargain with the Union over *both* the decision itself *and* its effects, and that the NLRB's chosen remedy is insufficient to make the affected workers whole.

We hold that a two-step framework determines whether there has been a valid waiver of a statutorily protected right to bargain. We ask: (1) whether the applicable CBA clearly and unmistakably resolves (or "covers") the disputed issue, whether with respect to the challenged management decision or the challenged effects, and (2) if not, whether the party asserting the right to bargain has clearly and unmistakably waived that right.

Applying this framework, we deny both petitions for review and enforce the NLRB's order in its entirety. The CBA allowed Rochester Gas to make changes in its employee work practices and to control the use of company property, but those provisions did not clearly and unmistakably allow the Company to forgo any negotiation with the Union over the effects of the Vehicle Policy Change, nor did they clearly and unmistakably waive the Union's right to bargain over the effects of the Vehicle Policy Change. Moreover, we conclude that the Board did not abuse its considerable discretion in granting the modified *Transmarine* remedy.

Cross-petitions for review denied.

Judge Straub concurs in the judgment and in the opinion of the court and files a concurring opinion.

> JAMES R. LAVAUTE (Brian J. LaClair, *of counsel*), Blitman & King LLP, Syracuse, NY, *for Petitioner Local Union 36, International Brotherhood of Electrical Workers, AFL-CIO.*
>
> JAMES S. GLEASON, Hinman, Howard & Kattell, LLP, Binghamton, NY, *for Petitioner-Cross-Respondent Rochester Gas & Electric Corp.*
>
> ROBERT ENGLEHART (MacKenzie Fillow, *on the brief*; Lafe E. Solomon, Acting General Counsel, Celeste J. Mattina, Acting Deputy General Counsel,

John H. Ferguson, Associate General Counsel, and Linda Dreeben, Deputy Associate General Counsel, *of counsel*), National Labor Relations Board, Washington, D.C., *for Respondent-Cross-Petitioner National Labor Relations Board.*

JOSÉ A. CABRANES, *Circuit Judge*:

The principal question presented is whether Local Union 36 of the International Brotherhood of Electrical Workers (the "Union"), waived its right to bargain over the effects of a particular decision made by Rochester Gas and Electric Corp. ("Rochester Gas" or the "Company").

The Union and Rochester Gas bring cross-petitions for review of the August 16, 2010 decision of the National Labor Relations Board ("NLRB" or the "Board"), in which the Board concluded that Rochester Gas had engaged in an unfair labor practice by refusing to bargain over the *effects* of its decision to discontinue its policy of permitting Union members to take company vehicles home at night (the "Vehicle Policy Change"), and by refusing to provide the Union with information regarding the alleged business reasons for the Vehicle Policy Change. The Board determined that Rochester Gas was not obligated to bargain with the Union about the Company's policy decision (as opposed to bargaining over the *effects* of that decision on employee benefits), concluding that the Board's General Counsel had withdrawn this allegation from his complaint. Finally, the Board granted the Union a modified version of a so-called *Transmarine* remedy,[1] awarding back pay to the affected employees for the lost value of no longer being able to use company vehicles after work.

In its cross-petition for review, Rochester Gas argues that the Union, by operation of the parties' collective bargaining agreement (the "CBA"), waived its right to bargain over the effects of

---

[1] A *Transmarine* remedy is "a limited backpay requirement designed both to make whole the employees for losses suffered as a result of the violation and to recreate in some practicable manner a situation in which the parties' bargaining position is not entirely devoid of economic consequences for the [employer]." *Transmarine Navigation Corp.*, 170 N.L.R.B. 389, 390 (1968). It is not the more expansive "make-whole" remedy of the type requested by the Union, which is more akin to full compensatory damages, *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 253 (1994), but rather is a variable remedy based partially upon the future actions of the employer and the union, *see Transmarine Navigation Corp.*, 170 N.L.R.B. at 389–90. Although *Transmarine* back pay is typically calculated using the affected employees' actual wages, the Board modified its usual remedy and based it instead on the lost value to the employees of using company vehicles after work.

the Vehicle Policy Change, and that because the Union had no right to bargain over that change, it had no right to receive the information it requested. The Union, in turn, argues that the CBA required Rochester Gas to bargain with the Union over *both* the decision *and* its effects, and that the modified *Transmarine* remedy was insufficient to make the affected workers whole.

We hold that a two-step framework determines whether there has been a valid waiver of a statutorily protected right to bargain. We ask: (1) whether the applicable CBA clearly and unmistakably resolves (or "covers") the disputed issue, whether with respect to the challenged management decision or the challenged effects, and (2) if not, whether the party asserting the right to bargain has clearly and unmistakably waived that right.

Applying this framework, we deny both petitions for review and enforce the order of the NLRB in its entirety. The CBA allowed Rochester Gas to make changes in employee work practices and to control the use of company property, but those provisions did not clearly and unmistakably allow the Company to forgo any negotiation with the Union over the effects of the Vehicle Policy Change, nor did they clearly and unmistakably waive the Union's right to bargain over the effects of the Vehicle Policy Change. Moreover, we conclude that the Board did not abuse its considerable discretion in granting the modified *Transmarine* remedy.

## BACKGROUND

### I.     Facts

Rochester Gas is a utility company serving both natural gas and electricity customers in nine New York counties. The Union represents 395 Rochester Gas employees, including employees in the Trouble Maintenance and Repair ("TMR") Department, which (as relevant here) includes a "low-voltage" group responsible for equipment carrying up to 480 volts. At the time of the Vehicle Policy Change, this low-voltage group was composed of seven technicians—who were responsible primarily for meter installations and replacements—and one inspector.

4

From at least 1990 until January 1, 2006, the Rochester Gas vehicle policy permitted low-voltage employees to drive Company vans to and from work and to keep them at their homes during their off-duty hours. Rochester Gas paid for the vehicles, maintenance, and gasoline, and withheld taxes from each employee's pay corresponding to the value of this benefit. The Company maintained this arrangement even though, as one employee testified, it was a "rare occurrence" for a low-voltage technician to proceed directly to a work location without first reporting to the Company offices.

In November 2005, Rochester Gas announced the Vehicle Policy Change by notifying the Union's president that, beginning on January 1, 2006, the low-voltage TMR employees would be required to park their service vehicles in the Company garage overnight. The Union repeatedly demanded that Rochester Gas bargain over the Vehicle Policy Change. The response of Rochester Gas relied upon a provision of the CBA stating that "the Company shall have the exclusive right to issue, amend, and revise safety and/or work rules, customs, regulations, and practices, except as expressly modified or restricted by a specific provision of this Agreement." In the view of Rochester Gas, this provision of the CBA permitted it to make the Vehicle Policy Change without bargaining with the Union over either the decision or its effects on Union members.

On January 10, 2006, the Union filed a grievance with the Company's Labor Relations Analyst, arguing that "[w]ages, benefits, hours and working conditions are mandatory topics of collective bargaining," and asserting that the Vehicle Policy Change changed the terms and conditions of employment for its affected members. By letters dated March 7, 2006 and June 5, 2006, the Union also requested the following from Rochester Gas: (1) a list of bargaining unit (*i.e.*, Union) jobs and personnel permitted to take Company vehicles home at night; (2) any Company analysis of the cost of the prior policy; (3) a list of non-unit personnel permitted to store Company vehicles at their homes; and (4) an indication of whether the Company had also changed its vehicle storage policy with respect to any non-unit personnel. By letter dated July 10, 2006, Rochester Gas responded

5

solely to the first of these information requests. The Union then withdrew its grievance in order to pursue its remedies under the National Labor Relations Act (the "Act").

## II.     Procedural History

The Union filed an unfair labor practices charge with the NLRB regarding the Vehicle Policy Change on June 13, 2006, and filed amended charges on August 17, 2006 and September 8, 2006. On October 31, 2006, the General Counsel of the Board (the "General Counsel"), having evaluated the charges made by the Union, commenced this proceeding against Rochester Gas, under the Act, by filing a formal complaint. The General Counsel's complaint alleged, *inter alia*, that Rochester Gas had made the Vehicle Policy Change "without prior notice to the Union[,] and without affording the Union an opportunity to bargain with [Rochester Gas] with respect to [the Vehicle Policy Change] and the effects of [the Vehicle Policy Change]," all in violation of §§ 8(a)(1) and (5) of the Act.[2] Joint App'x at 12. On January 24, 2008, the General Counsel amended the complaint (the "Amendment"), eliminating its opposition to the decision itself and leaving only its allegation that Rochester Gas had failed to bargain with the Union "with respect to the *effects* of [the Vehicle Policy Change]." *Id.* at 24 (emphasis added).

After a hearing on February 11, 2008, an Administrative Law Judge ("ALJ") issued a written opinion concluding that Rochester Gas had violated §§ 8(a)(1) and (5) of the Act by refusing to bargain over the effects of the Vehicle Policy Change and by failing to provide requested information to the Union. *Rochester Gas & Elec. Corp.*, Case 3-CA-25915 (N.L.R.B. June 12, 2008) ("*Rochester Gas*

---

[2] In pertinent part, Section 8(a) of the Act, 29 U.S.C. § 158(a), reads as follows:

(a)        Unfair labor practices by employer
It shall be an unfair labor practice for an employer—

      (1)        to interfere with, restrain, or coerce employees in the exercise of the rights [to, *inter alia*, collective bargaining]; . . . [or]

      (5)        to refuse to bargain collectively with the representatives of his employees . . . .

*I*"), *reprinted in* Joint App'x at 186. The ALJ did not address whether the Vehicle Policy Change itself constituted an unfair labor practice because he determined that the portion of the complaint dealing with the policy decision itself had been withdrawn by the Amendment of January 24, 2008. *Id.* at 199. By its Decision and Order dated August 16, 2010, the Board affirmed the decision of the ALJ and ordered a modified *Transmarine* remedy. *Rochester Gas & Elec. Corp.*, 355 N.L.R.B. No. 86, at 1-3, 2010 WL 3246661 (Aug. 16, 2010) ("*Rochester Gas II*"). These cross-petitions followed.

In this appeal, Rochester Gas argues that the Board erred in (1) holding that Rochester Gas violated § 8(a)(5) of the Act by refusing to bargain over the effects of the Vehicle Policy Change; and (2) holding that Rochester Gas violated § 8(a)(5) of the Act by failing to provide information requested by Local Union 36. The Union, in its petition, submits that the Board erred in (1) failing to address whether Rochester Gas violated § 8(a)(5) of the Act by refusing to bargain over both the decision to promulgate the Vehicle Policy Change *and* the effects of that decision; and (2) ordering only a modified *Transmarine* remedy rather than a "make-whole" remedy.

## DISCUSSION

## I. The Requirement of "Decision Bargaining" and "Effects Bargaining"

Section 8(a)(5) of the Act requires that employers engage in collective bargaining with their employees prior to changing employees' "wages, hours, and other terms and conditions of employment." *First Nat'l Maint. Corp. v. N.L.R.B.*, 452 U.S. 666, 674 (1981) (quotation marks omitted). The Act specifies that employers are required to engage in bargaining not only over the decision itself ("decision bargaining"), but also over the effects that the decision might have upon employees' terms and conditions of employment ("effects bargaining"). *See N.L.R.B. v. New Eng. Newspapers, Inc.*, 856 F.2d 409, 413 (1st Cir. 1988); *cf. Torrington Extend-A-Care Emp. Ass'n v. N.L.R.B.*, 17 F.3d 580, 595 (2d Cir. 1994) (applying the rule requiring "effects bargaining" where the underlying decision was at the employer's discretion).

7

## A. Contractual Interpretation and Waiver

We have observed that "[i]t is axiomatic that an employer violates its duty to bargain under § 8(a)(5) of the Act by changing employees' terms and conditions of employment without notifying and bargaining with the collective bargaining representative of its employees." *N.L.R.B. v. United Techs. Corp.*, 884 F.2d 1569, 1574–75 (2d Cir. 1989). Nevertheless, "[i]t is equally clear that a union may waive its statutory right to bargain over a particular term or condition of employment." *Id.* at 1575. Such a waiver must be "clear and unmistakable," for "we will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'" *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983). Where a union disputes the existence or extent of a waiver, "[t]he burden of proving a union waiver rests with the employer." *Olivetti Office U.S.A., Inc. v. N.L.R.B.*, 926 F.2d 181, 187 (2d Cir. 1991).

We have held that "[a] clear and unmistakable waiver may be found in the express language of the collective bargaining agreement; or it may . . . be implied from the structure of the agreement and the parties' course of conduct." *N.L.R.B. v. N.Y. Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991); *see also United Techs. Corp.*, 884 F.2d at 1575 ("Such waiver may be found in an express provision in the parties' collective bargaining agreement, or by the conduct of the parties, including their past practices and bargaining history, or by a combination of the two."). However, no waiver can be inferred absent evidence that the parties knew of, and intentionally waived, the right at issue. *See Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987) (waiver of a right under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, "requires an intentional relinquishment of a known right" (internal quotation marks omitted)); *cf. United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)).

### i. Deference to the NLRB's Decision on Waiver

When considering a decision of the Board about whether a right to bargain has been waived, the amount of deference we owe to the Board's decision depends on the grounds for that decision. It is settled that the Board is entitled to deference in its interpretation of the Act, so long as its interpretations are "rational and consistent with the Act." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 201 (1991) ("*Litton*") (quotation marks omitted); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).[3] Indeed, we have long deferred to the Board's "clear and unmistakable waiver" requirement as the legal standard to be applied when determining whether a party has waived a statutory right provided by the Act. *See Fafnir Bearing Co. v. N.L.R.B.*, 362 F.2d 716, 722 (2d Cir. 1966) (relying upon the "clear and unmistakable waiver" rule (quotation marks omitted)); *Fayer v. Town of Middlebury*, 258 F.3d 117, 122–23 (2d Cir. 2001) (reiterating that waiver of a statutory right must be "clear and unmistakable"); *see also In re Tide Water Assoc. Oil Co.*, 85 N.L.R.B. 1096, 1098 (1949) (establishing the "clear and unmistakable" standard for waivers of statutorily protected rights). That remains the governing legal standard.

We do not, however, defer to the Board's interpretation of a contract such as a CBA because the interpretation of contracts falls under the special, if not unique, competence of courts. *Litton*, 501 U.S. at 202–03. As the Supreme Court observed in *Litton*, "[a]lthough the Board has occasion to interpret [CBAs] in the context of unfair labor practice adjudication, the Board is neither the sole nor the primary source of authority in such matters." *Id.* at 202 (internal citation omitted). Instead, "courts are still the principal sources of contract interpretation." *Id.* (quotation marks omitted).[4]

---

[3] *Chevron*, of course, requires that, where there has been a "legislative delegation" of regulatory authority to an administrative agency, *Chevron*, 467 U.S. at 844, courts must defer to that agency's interpretation of that statute, so long as that interpretation is "based on a permissible construction of the statute," *id.* at 843. The NLRB's interpretation of the Act receives this "*Chevron* deference" unless its interpretation is unreasonable. *See N.L.R.B. v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001).

[4] The holding of *N.L.R.B. v. C & C Plywood Corp.*, 385 U.S. 421 (1967), is not to the contrary. That case dealt with the jurisdiction of the Board to adjudicate matters turning on contractual interpretation. *Id.* at 428 (holding that the

9

Because "[w]e would risk the development of conflicting principles were we to defer to the Board in its interpretation of the contract" in some statutory contexts and not in others, the Court held, "[w]e cannot accord deference in contract interpretation here." *Id.* at 203; *see also Honeywell Int'l, Inc. v. N.L.R.B.*, 253 F.3d 125, 132 (D.C. Cir. 2001) (applying *Litton* and explaining that "[t]he courts remain the ultimate arbiters of contract disputes . . . because deferring to the Board's contract interpretation would risk the development of conflicting principles for interpreting collective bargaining agreements." (internal citations, brackets, and quotation marks omitted)). [5]

### ii. The Waiver Analysis

Where, as here, the Board's determination regarding waiver is based upon an interpretation of a contract, we begin by making a threshold, *de novo* determination of whether a matter is "covered" by the contract—meaning that the parties have already bargained over the matter and set out their agreement in the contract. Only if we conclude as a matter of law that the matter was not covered by the contract can we consider whether the Board's finding regarding waiver was supported by substantial evidence. [6]

---

NLRB has the authority to interpret CBAs in the first instance where its interpretation is for the purpose of "enforc[ing] a statutory right which Congress considered necessary to allow labor and management to get on with the process of reaching fair terms and conditions of employment"); *see also Bath Marine Draftsmen's Ass'n v. N.L.R.B.*, 475 F.3d 14, 19–21 (1st Cir. 2007) (contrasting *C & C Plywood* with *Litton*). *C & C Plywood* did not address the level of deference we owe to those adjudications.

[5] Since *Litton*, we have discussed the appropriate level of deference to the Board's "reasonable interpretation of labor contracts[ ] in light of its expertise" on only one occasion. *See N.L.R.B. v. Local 32B-32J Serv. Emps. Int'l Union*, 353 F.3d 197, 199 (2d Cir. 2003) ("*Local 32B-32J*"). The parties in *Local 32B-32J* did not mention *Litton* in their briefs, and our panel did not cite the case; instead, it relied on a single case from our Court decided in 1984. We did, however, contrast our statement against two cases from our sister Courts of Appeals which declined to accord deference to the Board's contractual interpretation. *See id.* ("*But see Miss. Power Co. v. NLRB*, 284 F.3d 605, 619 (5th Cir. 2002) (Court owes no deference to the Board's interpretation of a contract clause); *BP Amoco Corp. v. NLRB*, 217 F.3d 869, 873 (D.C. Cir. 2000) (same)."). We decline to follow *Local 32B-32J*. *See Mahramas v. Am. Exp. Isbrandtsen Lines, Inc.*, 475 F.2d 165, 173 (2d Cir. 1973) (Oakes, J., dissenting) (arguing that a past decision of our Court "was erroneously decided, and because it overlooked Supreme Court precedent is not binding upon us"); *see also United States v. Berrios*, 676 F.3d 118, 126 n.1 (3d Cir. 2012) (same).

[6] We do not here address situations in which the union has bargained to impasse, thereby exercising its right to bargain, and has not memorialized the result of that bargaining process in the final CBA. *See, e.g., Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 540 F.3d 1072, 1079 & n.10 (9th Cir. 2008).

Put another way, we use a two-step framework to decide whether there has been a valid waiver of the right to bargain over a particular decision or its effects. At the first step, we ask whether the issue is clearly and unmistakably resolved (or "covered") by the contract. If so, the question of waiver is inapposite because the union has already clearly and unmistakably exercised its statutory right to bargain and has resolved the matter to its satisfaction. *See Bath Marine Draftsmen's Ass'n v. N.L.R.B.*, 475 F.3d 14, 25 (1st Cir. 2007) (waiver standard is irrelevant if "the Unions have already exercised their right to bargain"); *N.L.R.B. v. U.S. Postal Serv.*, 8 F.3d 832, 836 (D.C. Cir. 1993) ("[Q]uestions of 'waiver' normally do not come into play with respect to subjects already covered by a collective bargaining agreement.").[7] The interpretation of such a contract is a question of law. *See id.* at 837.

If we determine that the applicable CBA does not clearly and unmistakably cover the decision or effects at issue, we proceed to the second step, at which we ask whether the union has clearly and unmistakably *waived* its right to bargain. As noted above, such a waiver "may be found in an express provision in the parties' collective bargaining agreement, or by the conduct of the parties, including their past practices and bargaining history, or by a combination of the two." *United Techs. Corp.*, 884 F.2d at 1575. Whether a party has effectively waived its statutory right to bargain is therefore a mixed question of law and fact.[8]

Under this two-step process, an employer can successfully carry its burden of proof by showing either that the CBA (or any other contract governing the relations between the parties)

---

[7] Likewise, where the CBA clearly and unmistakably "covers" the effects of a decision—whether or not the CBA specifically mentions "effects bargaining," *see N.Y. Tele. Co.*, 930 F.2d at 1011—the union may no longer seek to bargain over the covered effects.

[8] *See also United States v. Curcio*, 694 F.2d 14, 22 (2d Cir. 1982), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984) (noting that while "the question [of] whether [a] judge applied too stringent a waiver standard" is a "question of law," the question of whether a court "misapplied the correct standard" is "a mixed question").

covers a particular decision, or that the Union has waived its right to bargain over a particular decision. *See Olivetti Office U.S.A.*, 926 F.2d at 187 (noting that "[t]he burden of proving a union waiver rests with the employer."). At either step, however, the contractual indicia of exercise of the right to bargain or proffered proof of waiver must clearly and unmistakably demonstrate the coverage or waiver sought to be proved. *Metro. Edison Co.*, 460 U.S. at 708; *see Chesapeake & Potomac Tel. Co. v. N.L.R.B.*, 687 F.2d 633, 636 (2d Cir. 1982) ("[A] union's intention to waive a right must be clear before a claim of waiver can succeed.").[9]

### iii. The Contractual Coverage Approach

It bears noting that, although we have used the term "covers," we have not adopted the "contractual coverage" *approach*, which several other Courts of Appeal use. *See, e.g.*, *Bath Marine Draftsmen's Ass'n*, 475 F.3d at 23. While some of our sister Courts of Appeals have decided that, although the Board is obligated to apply the "clear and unmistakable waiver" standard, they "owe[] no deference to the Board's choice of standard when the unfair labor practice turns solely on the interpretation of a labor contract,"[10] *id.*, we think that approach is inconsistent with the Supreme Court's holdings in *Metropolitan Edison*, 460 U.S. at 708, and *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 283, 287 (1956), and our own precedents interpreting those decisions.

Although the "contract coverage" approach aligns with the Supreme Court's admonition that "courts are still the principal sources of contract interpretation," *Litton*, 501 U.S. at 202, ignoring the "clear and unmistakable waiver" standard undermines our "national labor policy [that] disfavors

---

[9] As previously noted, *see* note 5, *ante*, a contract's "coverage" of the right to bargain over a particular decision need not specifically refer to the right to bargain over the *effects* of that decision. If the contract clearly and unmistakably covers "effects bargaining" as well as "decision bargaining," its failure to use the talismanic word "effects" does not require a different result.

[10] *Compare, e.g.*, *Bath Marine Draftsmen's Ass'n*, 475 F.3d at 25 (adopting the contractual coverage approach); *Honeywell Int'l, Inc.*, 253 F.3d at 132; *Chi. Tribune Co. v. N.L.R.B.*, 974 F.2d 933, 937 (7th Cir. 1992); *with Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 540 F.3d 1072, 1080 & n.11 (9th Cir. 2008) (noting that the "so-called 'contract coverage' standard" competes with the "clear-and-unmistakable" standard, and reaffirming the Ninth Circuit's commitment to the clear and unmistakable standard).

waivers of statutorily protected rights," *Olivetti Office U.S.A.*, 926 F.2d at 187. Especially in the context of effects bargaining, the "contract coverage" approach can lead to the unwitting relinquishment of rights. Taken to its logical conclusion, the "contract coverage" approach means that a contract granting an employer the unilateral right to make a decision almost always means that the union has also given up the right to bargain about the effects of that decision. *See Enloe Med. Ctr v. NLRB*, 433 F.3d 834, 839 (D.C. Cir. 2004) ("It would be rather unusual . . . to interpret a contract as granting an employer the unilateral right to make a particular decision but as reserving the union's right to bargain over the effects of that decision."). As discussed previously, however, a union has a statutory right to bargain over the decision itself *and* the effects that that decision might have upon employees' terms and conditions of employment

Our two-step analysis preserves the long-standing precedent requiring that the relinquishment of statutory rights be deliberate and obvious, while retaining the judicial authority to interpret contracts *de novo*. We must interpret the relevant contract with particular attention to the heightened waiver standards that apply in the labor context. Just as "[w]e will not thrust a waiver upon an unwitting party," *N.Y. Tel. Co.*, 930 F.2d at 1011, we will not find a contractual *exercise* of the right to bargain over a decision (or its effects) unless the contract clearly and unmistakably demonstrates that the parties bargained with respect to the disputed matter.

B.    **"Effects Bargaining" in This Case**

Rochester Gas alleges that, to the extent the Union had a right to bargain with Rochester Gas over the *effects* of the Vehicle Policy Change, the Union waived that right in the CBA.[11] Specifically,

---

[11] Rochester Gas also argues that the requirement of effects bargaining does not extend to decisions such as the Vehicle Policy Change, but rather only to situations where "the underlying decision is one that has a substantial impact on the employees' possibility of continued employment." Petitioner-Cross-Respondent's Br. at 15. But our law is clear that any decision that implicates the terms and conditions of employment must be the subject of bargaining, both over the decision itself and over the effects of the decision, unless the union waived that right. See *Torrington Extend-A-Care Emp. Ass'n*, 17 F.3d at 595; *New Eng. Newspapers, Inc.*, 856 F.2d at 413.

13

Rochester Gas argues as follows:

> The CBA gives [Rochester Gas] the right in its "sole and exclusive judgment" to "regulate the use of machinery, facilities, equipment, and other property of the Company;" the "exclusive right to issue, amend and revise reasonable policies, rules, regulations, and practices;" (Article 8) and "the exclusive and unilateral right to issue, amend, revise or terminate any or all benefits" (Article 24).

Petitioner-Cross-Respondent's Br. at 16; *see also* Joint App'x at 138, 147 (CBA Articles 8 and 24). These clauses of the CBA, Rochester Gas asserts, "clearly reserved to the Company's discretion" the right to change the overnight location of Company vehicles. *Id.* at 5.

The Board, however, found that the technicians' use of Company vehicles was a term or condition of employment, *see Rochester Gas I*, Joint App'x at 199, which antedated the execution of the CBA. Accordingly, the Board held that the Company was, absent waiver, obligated to bargain with the Union over the effects of the change. *Id.* We agree, and now hold that the provisions of the CBA invoked by Rochester Gas are not specific enough for us to determine that the Union clearly and unmistakably waived its right to bargain over the *effects* of a change under those clauses.

The general right given to Rochester Gas to "regulate the use of [its] machinery, facilities, equipment, and other property," Joint App'x at 139, does not explicitly or implicitly include the right to alter the terms and conditions of employment—even if those terms and conditions are related to Rochester Gas's use of its covered property. Although an intent to permit the Company to change its policy regarding vehicles without the need to bargain over the effects of such a decision may be a *plausible* reading of the contract, it is not a *clear and unmistakable* exercise of the Union's bargaining power regarding those effects. Thus, although the CBA reserves to Rochester Gas the right to make the decision to implement the Vehicle Policy Change,[12] we conclude that it does not clearly and unmistakably "cover" the disputed issue. That is, the CBA does not clearly and unmistakably set out

---

[12] Whether or not the rights reserved by Rochester Gas in fact include the right to make the decision at issue here is not before us. *See* Section II, *post.*

14

whether (and how) Rochester Gas must account for the effect that the Vehicle Policy Change has on the employee benefits relating to the vehicles. Therefore, at step one of our analysis, we conclude that the Union did not already exercise its statutory right to bargain over the effects of the Vehicle Policy Change.

At step two, we examine the Board's determination that the Union had not waived its right to bargain over the effects of the Vehicle Policy Change. We agree with the Board's finding that the Union did not waive this right, and we hold that this finding is supported by substantial evidence. The Board adopted the extensive factual findings and conclusions of law of an ALJ, after a bench trial principally devoted to the issue of waiver. *See Rochester Gas II*, 2010 WL 3246661. We defer to the Board's expertise as to its application of the "clear and unmistakable waiver" doctrine to the operative factual findings. *United Techs. Corp.*, 884 F.2d at 1575.

The ALJ, in a portion of his opinion adopted without alteration by the Board, wrote as follows:

> I cannot find any evidence that the Union has clearly and expressly waived its right to bargain over the effects of the Respondent's decision. Nothing in the evidence relating to the negotiations for collective bargaining speaks to any intent by the Union to consciously waive its right to effects bargaining and the collective bargaining agreement is silent as to effects bargaining, though arguably giving the Respondent the right to unilaterally make changes in otherwise mandatory subjects of bargaining. Clearly there were no negotiations over the effects of the decision to take away the private use of Respondent's vehicles by low voltage employees and there is no language dealing with this issue in the [CBA]. . . .
>
> None of the contractual provisions [in the CBA] . . . address the effects of taking any action under their wording nor do they address the removal of service vehicles at all. There is nothing that clearly gives Respondent the right to avoid effects bargaining from any action it might take in reliance on these Articles. There is nothing in the evidence in this record about negotiations that deals with effects bargaining.

*Rochester Gas I*, Joint App'x at 200. Having reviewed the Board's interpretations of the contract *de novo*

15

and its other findings for substantial evidence, we uphold the Board's determination that the Union had not waived its right to bargain over the effects of the Vehicle Policy Change.

We think "there is no adequate basis for implying the existence of waiver without a more compelling expression of it than appears in this [CBA]." *Metro. Edison*, 460 U.S. at 708 (alterations and quotation marks omitted). Like the Board, we "will not infer from [the] general contractual provision" here, which permits the Company unilaterally to determine the use of its property, "that the parties intended to waive [the] statutorily protected right" to bargain over effects of a (contractually authorized) unilateral change affecting petitioners' terms and conditions of employment. *Id.*

In sum, Rochester Gas was required to bargain with the Union over the effects of the Vehicle Policy Change.

## II.     "Decision Bargaining"

In its cross-petition for review, the Union argues that the Board erred in failing to consider whether Rochester Gas unlawfully refused to bargain over the decision to implement the Vehicle Policy Change.

As a general matter, § 3(d) of the Act commits to the General Counsel of the Board the "final authority" with respect to the "issuance of complaints." 29 U.S.C. § 153(d). The General Counsel has "discretion to decide whether or not to issue a complaint, and to determine which issues to include in that complaint." *Williams v. N.L.R.B.*, 105 F.3d 787, 791 n.3 (2d Cir. 1996) (internal citations omitted). Thus, "the General Counsel's refusal to include an issue in the complaint is final and unreviewable." *Id.*

### A.     The Exercise of the Prosecutorial Discretion of the General Counsel

Paragraph VIII(c) of the initial complaint in this case alleged that Rochester Gas promulgated the Vehicle Policy Change "without affording the Union an opportunity to bargain . . . with respect

16

to *this conduct and the effects of this conduct*." Joint App'x at 12 (emphasis added). The General Counsel later issued the Amendment, revising Paragraph VIII to allege that Rochester Gas promulgated the Vehicle Policy Change "without affording the Union an opportunity to bargain *with respect to the effects of this conduct . . . .*" *Id.* at 24 (emphasis added). On review, the Board recognized that the original complaint had alleged a "decision bargaining" violation, but held that "the General Counsel's amendment to the complaint withdrew the decisional-bargaining allegation." *Rochester Gas II*, 2010 WL 3246661, at *5 n.2.

Notwithstanding the General Counsel's Amendment and the Board's determination, the Union insists that the allegations of the complaint, when read together, continued to allege a decision bargaining violation. In particular, the Union relies on the language of Paragraph X, which alleges that "[b]y the conduct described above in paragraphs VIII(a) and (c), and IX(c), Respondent has been failing and refusing to bargain collectively and in good faith . . . ." Joint App'x at 13. The Union claims that, because the language of Paragraph X does not distinguish between decision and effects bargaining violations, both are properly alleged.

We disagree. By specifically removing the words "this conduct and" from Paragraph VIII of the complaint, the General Counsel exercised his prosecutorial discretion and clearly indicated his determination that Rochester Gas should not be charged with a "decision bargaining" violation. The Amendment consisted solely of the revision of Paragraph VIII, and neither reprinted nor referenced any other portion of the complaint.[13] We cannot find, and the Union does not offer, an explanation for the Amendment other than that the General Counsel specifically intended to remove the allegation that Rochester Gas had violated its obligation to bargain over the Vehicle Policy Change.

---

[13] Contrary to the Union's argument, the General Counsel's Amendment is incorporated by reference into Paragraph X, and there was therefore no need to amend Paragraph X in order to remove the allegation of a decision bargaining violation.

**B.    The Board Properly Declined to Review the General Counsel's Charging Decision**

The Union further argues that, even if the Amendment eliminated the decision-bargaining allegation, we should review the General Counsel's decision for two reasons.  First, the Union claims we should do so in order to ensure that "Board decisions are . . . subject[ed] to 'the requirement of reasoned decision making.'"  Petitioner's Br. at 10–11 (quoting *Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998)).  Second, the Union argues that the Board must not "'fail to acknowledge the natural and logical implications of the facts it credited and the analytic framework it adopted,'" *id.* at 11 (quoting *New Eng. Health Care Emps. Union v. N.L.R.B.*, 448 F.3d 189, 196 (2d Cir. 2006) (alteration omitted)), and that the Board should therefore have determined that the "facts it [had] credited" demonstrated a decision-bargaining violation, *id.*

The Union's arguments, although substantially correct general statements of the law governing our review of the Board's holdings, are inapposite to our review of the General Counsel's exercise of prosecutorial discretion.  The General Counsel's charging decision is not a decision of the Board subject to the "requirement of reasoned decision making," *Allentown Mack Sales & Serv., Inc.*, 522 U.S. at 374.  Rather, "the General Counsel's refusal to include an issue in the complaint is final and unreviewable, [and] we are precluded from reaching the issue" of whether the General Counsel should have charged Rochester Gas with a decision-bargaining violation.  *See Williams*, 105 F.3d at 791 n.3 (citation omitted); *cf. Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (noting, in the context of a criminal prosecution, that "so long as [a] prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion")..

As the Union concedes, Petitioner's Br. at 14–15, the General Counsel is the master of his complaint and may freely alter its scope at any point prior to the hearing. *See* 29 C.F.R. § 102.17.[14] We decline to question the considered judgment of the General Counsel, and affirm the Board's determination that the General Counsel withdrew the initial allegation that Rochester Gas had breached its obligation to bargain over the decision to implement the Vehicle Policy Change.

## III.    Request for Information

Rochester Gas argues that the Board erred in finding a § 8(a)(5) violation based on the Company's refusal to provide information requested by the Union. As a general matter, an employer's duty to bargain in good faith under §§ 8(a)(1) and (5) of the Act includes the duty "to provide information that is needed by the bargaining representative for the proper performance of its duties." *N.L.R.B. v. Acme Indus. Co.*, 385 U.S. 432, 435–36 (1967). "A union's demand for information does not . . . [, however,] automatically trigger the employer's obligation to provide it." *Stroehmann Bakeries, Inc. v. N.L.R.B.*, 95 F.3d 218, 222 (2d Cir. 1996). Rather, the Board and the courts must take care that the requested information is "reasonably related to the . . . bargaining [process]." *Id.* The question of whether an employer's refusal to furnish information violates the Act is uniquely suited to the Board's expertise, and we will modify or reverse the Board's decision only if it is not supported by substantial evidence in the record. *See N.L.R.B. v. Glover Bottled Gas Corp.*, 905 F.2d 681, 684–85 (2d Cir. 1990); *N.L.R.B. v. Gen. Elec. Co.*, 418 F.2d 736, 752–53 (2d Cir. 1969); *see also* Administrative Procedure Act, 5 U.S.C. § 706(2).

---

[14] 29 C.F.R. § 102.17 provides that a complaint in a case before the Board

> . . . may be amended upon such terms as may be deemed just, prior to the hearing, by the regional director issuing the complaint; at the hearing and until the case has been transferred to the Board . . . , upon motion, by the [ALJ] designated to conduct the hearing; and after the case has been transferred to the Board . . . , at any time prior to the issuance of an order based thereon, upon motion, by the Board.

In this case, as previously noted, the Union requested the following information from Rochester Gas: (1) a list of unit jobs and personnel permitted to take Company vehicles home at night; (2) any Company analysis of the cost of the prior policy; (3) a list of non-unit personnel permitted to store Company vehicles at their homes; and (4) a statement as to whether the Company announced to any non-unit personnel the same restriction imposed upon the low-voltage employees. Rochester Gas responded only to the first request, noting that "[t]he company believes it is not obligated to provide you with financial information on company vehicle costs nor does the company believe the union's request for information on non-union employee vehicles is relevant or necessary to your duties and responsibilities."

As we have said in the past, "[i]t is beyond cavil that because the bargaining-unit representative is obliged to prosecute the grievances of its members, an employer must provide all information relevant to the processing of those grievances." *N.Y. Tel. Co.*, 930 F.2d at 1011. The Board correctly determined that the information requested by the Union was "highly relevant" to the bargaining process the Union sought to begin. The ALJ heard testimony from a leader of the Union that the Union "needed th[e] information in order to develop a bargaining position"—specifically, to be able to address properly the cost issues that Rochester Gas claimed had caused the Vehicle Policy Change. Without the requested information, a Union witness stated in testimony evidently credited by the ALJ, the Union's ability to negotiate on behalf of its members was impaired.

We conclude that substantial evidence in the record supported the Board's determination that the requested information was relevant and that the Company was obligated to provide it to the Union. We affirm the Board's holding that the failure of Rochester Gas to provide the information was a violation of the Act.

**IV. Remedy**

Finally, the Union argues that the Board erred in narrowing the ALJ's broad "back pay" remedy. As a general matter, § 10(c) of the Act empowers the Board to impose affirmative remedies if it finds violations of the Act. *See* 29 U.S.C. § 160(c).[15] "[N]othing in the language or structure of the Act . . . [,however,] requires the Board to reflexively order that which a complaining party may regard as 'complete relief' for every unfair labor practice." *Shepard v. N.L.R.B.*, 459 U.S. 344, 352 (1983). We review the remedy chosen by the Board for abuse of discretion. *N.L.R.B. v. G & T Terminal Packaging Co.*, 246 F.3d 103, 119 (2d Cir. 2001); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art "abuse of discretion" includes errors of law).

In this case, the ALJ's broad remedial holding required Rochester Gas to, *inter alia*, "make whole its employees for any losses they may have suffered as a consequence of its decision to eliminate the vehicle benefit." Joint App'x at 204. The Board thereafter modified that remedy, concluding that "a remedy similar to that in *Transmarine Navigation Corp.*, 170 N.L.R.B. 389 (1968), is more appropriately tailored to the violation and will better effectuate the policies of the Act." *Rochester Gas II*, 2010 WL 3246661, at *2. The so-called "*Transmarine* remedy"[16] requires an employer

---

[15] In pertinent part, 29 U.S.C. § 160(c) provides:

> If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter.

[16] As explained above, *see* note 1, *ante*, and surrounding text, a *Transmarine* remedy is imposed in order to "make whole the employees for losses suffered as a result of the violation and to recreate in some practicable manner a situation in which the parties' bargaining position is not entirely devoid of economic consequences for the [employer]." *Transmarine*, 170 N.L.R.B. at 390. Specifically, the *Transmarine* remedy requires that bargaining take place and back pay be paid until one or more of the following conditions is met: (1) the parties reach an agreement; (2) the parties reach a bona fide bargaining impasse; (3) the union fails to request bargaining within 5 business days of the Board's decision or to commence negotiations within 5 business days of the employer's notice of its desire to bargain; or (4) the union ceases to bargain in good faith. *See id.*; *see also Melody San Bruno, Inc.*, 325 N.L.R.B. 846, 846 (1998) (explaining that the five-day periods called for by *Transmarine*'s third prong indicate five business days rather than five calendar days).

21

who failed to engage in effects bargaining to provide employees with limited back pay, from five business days after the date of the Board's decision until the occurrence of one of four specified conditions, each of which is designed to encourage the parties to bargain in good faith. *Id.* at *2.

Because the Board "draws on a fund of knowledge and expertise all its own, . . . its choice of remedy must . . . be given special respect by the reviewing courts." *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575, 612 n.32 (1969). Indeed, in order to justify its chosen remedy, the Board must show only a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). The Board correctly argues that the "*Transmarine* remedy" is its standard remedy in "effects bargaining" cases. Rather than provide a full *Transmarine* remedy, however, which would base back pay upon Union members' wages, the Board crafted a limited remedy that would base any eventual award of back pay upon the specific loss alleged here—the loss of the use of the company vehicle. This limitation was not an abuse of discretion, but demonstrates the careful attention paid by the Board to this case.

The Board's choice of the limited back pay remedy in this case was well within its broad remedial discretion. We affirm the determination of the Board with regard to its chosen remedy.

## CONCLUSION

To summarize, we hold that:

(1) The determination of whether a union has waived its right to bargain over a decision by management which would ordinarily be subject to mandatory bargaining—or over the effects of that decision—should be conducted using a two-step inquiry. First, we ask whether the right subject to collective bargaining is clearly and unmistakably covered by the contract. Second, if it was not, we ask whether the union has effected a clear and unmistakable waiver of its right to bargain. If the alleged waiver is not clear and unmistakable, we will find that the union has not waived its right to bargain.

22

(2) The collective bargaining agreement at issue here cannot be read either to cover the effects of the Vehicle Policy Change or to waive the Union's right to bargain regarding the effects of the Vehicle Policy Change.

(3) The Board appropriately declined to consider whether the Vehicle Policy Change itself was permitted by the CBA, correctly deferring to the charging decision of the Board's General Counsel.

(4) The Board correctly determined that Rochester Gas's refusal to provide to the Union information that the latter had requested in order to aid it in the bargaining process constituted an unfair labor practice prohibited by the Act; and

(5) The remedy crafted by the Board was not an abuse of its discretion.

For the reasons stated above, we deny the cross-petitions for review and enforce in full the August 16, 2010 Decision and Order of the Board. *See* 29 U.S.C. § 160(e).[17]

---

[17] 29 U.S.C. § 160(e) provides, in pertinent part, as follows: "The Board shall have power to petition any court of appeals of the United States . . . wherein the unfair labor practice in question occurred . . . , for the enforcement of such order and for appropriate temporary relief or restraining order . . . ."

STRAUB, *Circuit Judge*, concurring:

Because I am in substantial agreement with the majority opinion, I concur. I write separately to note that the majority opinion articulates settled legal doctrine in a novel way, creating a "two-step framework" which I regard as an unnecessary innovation. However, this reformulation does not, in my view, disturb the substance of the established principles that apply to, and dictate the outcome of, this appeal.

The National Labor Relations Board's (the "Board") "clear and unmistakable" waiver standard—a product of the Board's considerable experience in labor-management relations—"requires bargaining partners to unequivocally and specifically express their mutual intention to permit unilateral employment action with respect to a particular employment term, notwithstanding the statutory duty to bargain that would otherwise apply." *Provena Hosps.*, 350 N.L.R.B. 808, 811 (2007). Employees' statutory right to bargain will not be deemed to have been waived based merely on "general contractual provisions." *Id. Cf. NLRB v. N.Y. Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991) ("A clear and unmistakable waiver may be found in the express language of the collective bargaining agreement; or it may . . . be implied from the structure of the agreement and the parties' course of conduct.").

Although the majority opinion uses the term "coverage" and recasts our precedent as a two-step inquiry, it continues to adhere, as we long have, to the "clear and unmistakable" waiver standard developed by the Board and endorsed by the Supreme Court. *See, e.g.*, *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983) ("[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated. More succinctly, the waiver must be clear and unmistakable."). In remaining faithful to the "clear and unmistakable" standard, the majority opinion affords the Board's

-1-

waiver rule appropriate deference. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200 (1991) ("[i]f the Board adopts a rule that is rational and consistent with the [National Labor Relations] Act . . . then the rule is entitled to deference from the courts") (quotations omitted). *See also Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 787–88 (noting the "considerable deference" the Board is due "by virtue of its charge to develop national labor policy") (quotations omitted); *Civil Serv. Emps. Ass'n v. NLRB*, 569 F.3d 88, 91 (2d Cir. 2009). The majority opinion's two-step analysis does not depart from the foregoing principles, which, in part, lead it to correctly reject the "contractual coverage" approach of certain of our Sister Circuits.

Indeed, the majority opinion notes that any "contractual indicia of exercise of the right to bargain or proffered proof of waiver must clearly and unmistakably demonstrate the coverage or waiver sought to be proved." (Maj. Op. at 12.) Therefore, the majority opinion's new articulation of the long-settled law governing waiver of statutory bargaining rights should not be read as a retreat from the "clear and unmistakable" standard developed by the Board, to which we remain, under binding precedent, required to defer.